(76 South. 250)

No. 22355.

KELLY et al. v. SCHMIDT & ZEIGLER, Limited.

(June 11, 1917. Rehearing Denied June 30, 1917.)

*(Syllabus by the Court.)*

MUNICIPAL CORPORATIONS ⬤⟹705(1), 706(3)—STREETS—USE OF.

The chauffeur of an auto truck, driving over that portion of a public highway which is ordinarily used by vehicles going in the opposite direction, must keep a very vigilant watch ahead for vehicles and pedestrians. He should signal his approach as a warning; and, when it is dark, or nearly so, the lights on his vehicle should be burning. He should proceed slowly and cautiously; and, at the first appearance of danger, he should take proper steps to avoid it, and, if necessary, stop his machine, and even the motor, when it is necessary and practicable. He will be presumed, in case of accident, to have seen what he should have seen in the performance of his duties.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Mr. and Mrs. William H. Kelly against Schmidt & Zeigler, Limited. From judgment for plaintiffs, defendant appeals, while plaintiffs prayed increase of judgment. Affirmed.

Philip Gidiere and L. P. Bryant, Jr., both of New Orleans, for appellant. M. C. Sharff, of New Orleans, for appellees.

SOMMERVILLE, J. Plaintiffs, the parents of a boy 12 years of age, demand damages in the sum of $25,000 against defendant for injuries to and death of their son, resulting from being run over by an auto truck, the property of defendant, which was being driven by one of its employés, at about 6 o'clock of the afternoon of December 9, 1915, near the intersection of Howard avenue and Dryades street, in the city of New Orleans. They allege that the injuries to and death of their son were due to the negligence and fault of the defendant and its employés, without fault on the part of their said son.

Defendant answered, denying all the allegations of plaintiffs' petition generally, and alleged that plaintiffs' son suddenly and unexpectedly ran from the side of the street, running into the side or rear portion of respondent's truck, and that he alone was responsible for the accident which befell him.

There was judgment in favor of plaintiffs in the sum of $5,000, and defendant has appealed. Plaintiffs have answered the appeal, and have asked an increase in the judgment to $25,000.

The accident occurred about 5:55 o'clock on the afternoon of December 9th, at which time of the year darkness is setting in, if it is not already quite dark, in this section of the country. The evidence shows that the auto truck, which was being driven by an employé of the defendant named Mack, was on its way to a garage, which the driver hoped to reach before 6 o'clock; that it was proceeding from the corner of Rampart street and Howard avenue, on the lower side of that avenue; and the driver, seeing an approaching train on the neutral ground of Howard avenue going in the direction of the Union Station from Baronne street, made the crossing from the lower to the upper side of Howard avenue at a very rapid rate of speed, and before the moving train reached that intersection. The driver then proceeded along the upper side of Howard avenue, through which an electric car line ran, keeping close to the neutral ground on that avenue; that is, on the left-hand side of the street car track, and between the street car track and the neutral ground, which, according to the evidence of the driver, was not the portion of the street which was generally used by vehicles going towards the river, as he was then going; this deviation from the right-hand side of the street car track to the left-hand side is sought to be excused in the answer of the defendant "because of the fact

that the right-hand side of the street was then and there obstructed."

The intersection is a very busy place about the hour when the accident happened; there was a street car standing on the track, which was about to make the switch at that crossing, on its way uptown; there was a steam car on the neutral ground going in the same direction, towards the lake; the street car had stopped at the usual place for taking on and discharging passengers; and it was just at this particular point that the little boy was killed; and, as he was a seller of newspapers, it may have been that he was offering papers for sale, or was about to offer papers for sale, to persons who were shown to have been on the rear platform of the street car. Under these circumstances, the driver of the auto truck must have seen the boy, or he should have seen him: but he says that he did not see him. If he did not see the boy, he was at fault.

Defendant's auto truck was being driven at a great rate of speed, without lights; and the driver gave no signal as he approached the intersection of these two streets, and, without slacking his speed, he ran his auto on the wrong side of the street, through a narrow way between a stationary electric car and the neutral ground, over a place which he well knew to be used by passengers in getting on and off street cars, and where he might expect traffic to be congested, with a noisy steam train making the crossing at the same time. All of this was done in total disregard of the rights of others using the street. Such conduct was gross negligence on the part of the driver, and it resulted in the death of plaintiffs' son.

On the evening of the accident, the driver made a statement at the police station, in which statement he said:

"I was coming in Howard avenue, towards the river, and on reaching near the corner of Dryades my helper told me to look out, I was running over a boy. I did not see the boy, but I saw the boy when he got up and ran on the sidewalk and dropped. My reason for not seeing the boy was that a train and street car were going out Howard avenue, and the boy must have gotten off the train or street car."

On the trial, the driver testified that he—

"had turned the corner of Dryades, in Howard avenue, and after going a short distance beyond the street car his helper, who was seated with him on the truck, said to him, 'Look out, Mack! you have done runned over a boy,' and I looked around and I saw a boy getting up."

Some of the witnesses testified that the driver of the truck did not look around until he had nearly reached Baronne street; that it was then that the helper said to the driver, "You have done runned over a boy."

This testimony is contradictory of the statement made on the evening of the accident, when the driver stated that his helper said to him, "You are running over a boy." It is very clear that the helper saw the boy who was being run over at or about the time the accident happened, if not before; and it is very clear that the driver should have seen the boy at the same time. He testified that he was on the right-hand side of the truck, and the boy was killed on that side. It was easier for him to have seen the boy than it was for the helper, who was on the left-hand side, to have seen him. It has been held:

"The chauffeur, in driving his machine on a public highway, must keep a vigilant watch ahead for vehicles and pedestrians, and, at the first appearance of danger, take the proper steps to avoid it, and if necessary stop his machine, and even the motor, when it is necessary and practicable. He will be presumed in case of accident to have seen what he should have seen in the performance of his duties." Thompson on Negligence (White's Supplement) vol. 8, par. 1340h.

And a chauffeur, driving a machine on a portion of the public highway which is usually used by vehicles going in an opposite direction, and driving by a standing street car at the regular place for taking on and putting off passengers, must use extra precautions to avoid accidents. Under such circum-

stances he will certainly be presumed, in case of accident, to have seen a person standing in the roadway, or near the rear end of the street car, and his employer will be responsible in damages for an accident occurring through his fault.

The record does not present any sufficient reason for amending the judgment of the district court, as was prayed for by plaintiffs. Judgment affirmed.