## No. 9785
## Orleans

## TAZEWELL R. LATHAM, Appellant, v. WILLIAM H. UMBACH

(November 2, 1925, Opinion and Decree)

(December 14, 1925, Rehearing Refused)

(February 2, 1926, Writ of Certiorari and Review Denied by Supreme Court.)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Automobiles—Par. 4, 4 (c).**

When a railroad train is traversing a public roadway or thoroughfare of a populous city, and a motor vehicle on said roadway has stopped close to the railway track, facing the train and awaiting its passage, it is actionable negligence for the driver of the vehicle to cross the track immediately after the train has passed without looking carefully for objects and persons which may be directly in front of him and on the other side of the track.

2. **Louisiana Digest — Automobiles — Par. 4 (c).**

A conductor, while standing in a public roadway performing the duty of flagging his car across an intersecting railroad track, is entitled to the same consideration from drivers of motor vehicles as should be accorded to traffic officers performing similar duties. (Civil Code, Art. 2315. Editor's note.)

Appeal from Civil District Court, Parish of Orleans, Division "D". Hon. Porter Parker, Judge.

This is a suit arising out of an automobile accident in which the plaintiff was run over by defendant's motor truck.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Theo. H. McGiehan, of New Orleans, attorney for plaintiff, appellant.

J. Zach Spearing, of New Orleans, attorney for defendant, appellee.

B. W. Kernan, of New Orleans, attorney for New Orleans Public Service Co.

BELL, J. Plaintiff sues defendant in the sum of five thousand dollars for physical injuries which he claims to have suffered in being run over by defendant's motor truck in the city of New Orleans, at a place generally known or described as "the levee front, head of Canal street".

The case was tried without jury, and there was judgment for defendant, from which plaintiff has appealed.

The petition shows that about 8:30 o'clock p. m., on May 4, 1923, plaintiff, as the conductor on a Louisiana avenue car, was in the act of flagging or directing his car across the tracks of the Public Belt Railroad, just after a freight train of the Belt Road had crossed the street car track upon which his car was moving in the direction out Canal street from the ·levee front toward the lake side of the city; that while standing on the roadway in front of his car, at the intersection of the two tracks, and while performing his duty, as above described, he was run down by defendant's motor truck, which suddenly crossed the Public Belt track immediately after the freight train had passed. Charging defendant with gross negligence for

reckless driving, and for violation of traffic ordinances, plaintiff seeks recovery in damages enumerated as follows:

Broken leg _____$3000.00
Pain, suffering, agony, etc. _____ 1000.00
Loss of time _____ 1000.00

Defendant · answers by denying the charges of negligence as enumerated in plaintiff's petition, and by further denying that he was in any manner at fault. He admits the fact that plaintiff was injured by his truck, but denies that it suddenly approached or knocked plaintiff to the ground. Further answering, defendant avers that when he first saw plaintiff he had either fallen to the ground or was in the act of falling, and that he, defendant, did everything in his power to avoid a collision with plaintiff; that his truck was going slowly, was always under control, and was stopped almost immediately.

The New Orleans Public Service Inc., plaintiff's employer at the time of the accident, has intervened in this suit; it reiterates and adopts all allegations of negligence made against defendant in plaintiff's petition, and prays that it be reimbursed to the extent of $293.26 out of any judgment which may be rendered in favor of plaintiff against defendant, having compensated plaintiff to said amount, under Act 20 of 1914, and amendments thereto. Admissions in the record show that such compensation has been paid.

There is little difficulty in arriving at the facts of this case. The accident is admitted. The place where plaintiff was injured and the extent of his injuries are agreed upon by all litigants in this matter. But two questions present themselves for adjudication. The first question is one of fact, and involves the determination of whether the defendant, in striking the plaintiff, was guilty of negligence in the operation of his truck. We think that he was. In his pleadings, he admits that when he first saw the plaintiff he had either fallen to the ground or was in the act of falling. The evidence shows, particularly the plan which has been admitted as correct, and is on file before us, that the distance of the truck from plaintiff, immediately before the accident, was scarcely more than from seven to eight feet, that is to say, less than the length of any motor truck. This short distance being established as a fact, it follows that defendant, seated at an elevation upon and in front of his truck, should have easily seen any object directly in front of him at the moment the last car of the freight train had passed on and ceased to block his vision of things ahead of him. It is agreed that the truck was at rest while the train was passing, and hence it is evident that in going the distance of about seven feet defendant was bound to have gone heedlessly across the Belt track, in negligent disregard of any thing or person which might have been in front of him.

Plaintiff here has not been charged in defendant's answer with any contributory negligence. We find nothing in the case of Elmendorf vs. Clark, 143 La. 971, 79 South. 557, cited in defendant's brief, that could make that authority applicable to the instant case. There was a distinct charge of negligence pleaded by defendant Clark, and such charge was supported by proof that the injured plaintiff, a ·young boy, while playing on the sidewalk had run suddenly into the street in front of an automobile.

The record does not show plaintiff to have been standing in any improper place or doing anything that was not incident to the particular duties, in the performance of which he was at that moment engaged. It is contended by appellee's counsel that the place where plaintiff was standing, that is to say, about four feet from the right side of his car and about one foot on the levee side rail of the· Public Belt road

and between the two rails thereof, was not a proper place for a pedestrian, and therefore it is argued that the place was in no sense a pathway for such persons. We cannot take this view of the case. Plaintiff cannot be classified, under the circumstances of this case, as an ordinary pedestrian. He was performing a particular duty for his employer, the New Orleans Public Service Inc. It was enfranchised and empowered to operate its cars with due care and caution through the public streets and thoroughfares of a populous city. The duty to which plaintiff, as its employee, was assigned required his presence at certain times upon the public roadways and involved service quite similar to that of a municipal traffic officer. He was therefore entitled to as much consideration, if not, perhaps, as much respect, as is usually accorded those directing traffic under police authority. But even if plaintiff be considered as only a pedestrian, indeed a "jaywalker", the fact that he was not at the moment of the accident traveling in pathways usually assigned to such humble or careless members of society, did not make defendant less obligated to consider plaintiff's presence or to see him while he was in a place where defendant was bound to have seen him by the exercise of ordinary care. There is no evidence as to whether defendant's headlights were burning. If they were burning, a fact which we will assume, it follows that with plaintiff just a few feet ahead of him, defendant should have had an exceptional view of him before starting his truck across the track. No horn was blown nor other signal of approach given.

We are satisfied plaintiff could not have run around the end of the freight train before it had passed the intersection of the trolley and Belt tracks, as contended by defendant. If this were a fact, he would have been much further to the left of defendant's truck, as it faced the river, and he would, in all likelihood, have been struck by the left front wheel instead of the right front wheel of the truck. Defendant testifies, in part, as follows:

"As soon as the train passed I came across the track * * * going very slow, in fact, I had not the gears shifted from first yet—I mean third."

It seems plain from the above testimony that the truck was put in motion immediately after the last freight car—an obstruction to his vision—had cleard the intersection, and that though the truck was going slowly, it had been put into gear at the very moment when defendant should have seen plaintiff and should have kept his truck at rest.

Considering the view of this case, such as we have discussed above, we find it unnecessary to pass upon the second question, which is one of law, raised by the plaintiff in this case: Did the defendant violate the traffic laws by driving, as shown by the evidence, from the upper side of Canal Street to the lower side thereof while traveling on his journey to the ferry, upon which he intended to cross the river? It is contended that in so doing, he disregarded the provisions of Section 1 of the traffic ordinance C. C. S. 7490 of the City of New Orleans, and that this added negligence was another cause of the accident. We have concluded, from all facts in this case, that it was the manner in which the truck was operated after coming to a stop, rather than the place at which it was standing just before the accident, which constituted the dominent and proximate cause of the accident.

We therefore give no further consideration to this point of the case.

The numerous and well-selected authorities found in appellant's brief have been duly considered, and we note, particularly, that authority of Kelly vs. Schmidt and

Ziegler, 142 La. 91, 76 South. 250, as most applicable to the facts and the law which are presented in this case. It was there said:

"The chauffeur of an auto truck, driving over that portion of a public highway which is ordinarily used by vehicles going in the opposite direction, must keep a very vigilant watch ahead for vehicles and pedestrians. He should signal his approach as a warning; and when it is dark, or nearly so, the lights on his vehicle should be burning. He should proceed slowly and cautiously; and at the first appearance of danger, he should take proper steps to avoid it, and, if necessary, stop his machine, and even the motor, when it is necessary and practicable. He will be presumed, in case of accident, to have seen what he should have seen in the performance of his duties."

(See also Gannon vs. N. O. Ry. & Light Co., 154 La. 435, 97 South. 601.)

In Huddy on Automobiles, page 507, Section 422, the duty which is imposed upon drivers of motor vehicles to entertain due consideration and care for those who are compelled to wait in the performance of their duty upon a public thoroughfare, is stated as follows:

"The rights of a workman, whose duties require his continual presence in the street are somewhat different from those of a pedestrian, who uses the streets merely as a means of travel from one place to another. The operator of a motor vehicle should appreciate the fact that the employment of a workman in a street requires that his attention be directed to his work rather than to the approach of vehicles. Under such circumstances, reasonable prudence on the part of the driver of the machine would seem to require that he have the car under control so that he can avoid the workman if the latter does not notice his approach, and, in cases, he may be charged with negligence, and the driver may be deemed guilty of negligence if he fails to give any warning of his approach. If the workman in the street, while engaged in his work, without any movement on his part, is struck from behind by a motor vehicle, in broad daylight, a *prima facie* case

of negligence is established. The question of negligence and contributory negligence is generally for the jury. Thus, the driver of an automobile has been held liable for injuries received by a workman on a street railway track, and liability may be against a driver where the car has struck a policeman or traffic office engaged in the performance of his duties in the street; similarly, an employee of a city sewer gang has been allowed to recover for injuries sustained by a collision with a taxicab. So, too, a highway or bridge employee, can recover for injuries sustained from a motor vehicle. The workmen at a railway crossing may maintain an action for injuries from a collision with an automobile."

We are of the opinion that plaintiff should recover in this case, and that the judgment appealed from should not have gone for the defendant. The record shows that the injuries sustained by the plaintiff, while painful and of a nature serious enough to incapacitate him for a period of about ten weeks, the fracture of the leg which plaintiff sustained was not of a permanent nature, and as the physician testifying in the case says, "ought to have one hundred per cent restoration of function". Other evidence convinces us that there was no permanent disability. We think that the sum of One Thousand Dollars would be a fair and proper compensation for the injuries sustained.

Considering the petition of intervention herein filed on behalf of the New Orleans Public Service, Inc., and the relief prayed for by said intervenor, it follows that there should be judgment for intervenor and against defendant herein for $293.26, said amount to be paid out of the total damages of One Thousand Dollars, for which defendant should be liable. After satisfying the claim of intervenor, the balance of the total judgment, to-wit: $706.74, should be paid, with legal interest thereon from judicial demand, to plaintiff.

It is therefore ordered that the judgment appealed from be reversed.

It is further ordered, adjudged and decreed that there now be judgment in favor of intervenor, the New Orleans Public Service, Inc., and against defendant, William H. Umbach, in the sum of Two Hundred Ninety-three Dollars and Twenty-six cents ($293.26), with legal interest thereon from date of this judgment until paid, and that there be further judgment in favor of plaintiff, Tazewell R. Latham, and against defendant, William H. Umbach, in the sum of Seven Hundred Six Dollars and Seventy-four cents ($706.74), with legal interest thereon from August 27, 1923, until paid, and for all costs in both courts.