No. 3993

Second Circuit

(First Division)

LOCKE v. SHREVEPORT LAUNDRIES, INC.

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)
(January 4, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Pugh, Grimmet & Boatner and F. Simon, of Shreveport, attorneys for plaintiff, appellee.

Blanchard, Goldstein, Walker & O'Quin and Mabry & Carstarphen, of Shreveport, and Milner & Porteous and William A. Porteous, Jr., of New Orleans, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff sues to recover damages of defendant for the death of her husband, John Edward Locke, who, it is alleged, was carelessly and negligently run into by defendant's truck, operated by D. D. Norman, its employee, and killed, on the Coushatta highway about five miles from Bossier City, at the hour of 6:45 p. m., December 29, 1930.

It is alleged by plaintiff that said Norman was traveling at a high rate of speed without keeping a proper lookout; that lights of automobiles coming towards him made it difficult for him to observe the road he was traveling but notwithstanding this handicap he did not slacken his speed, nor did he stop, but continued to travel at a high rate of speed and in so doing drove too far to his right side and struck and killed her husband; that if said Norman had exercised proper precaution when meeting automobiles on said highway at the time said Locke was killed, the tragedy would have been averted.

Defendant admits that Norman was in its employ when the truck driven by him ran into and killed plaintiff's husband, and admits that at the time of the accident he was operating the truck under and in the course of his employment. In other respects the allegations of the petition are denied. Defendant further avers that said Locke either stepped suddenly in front of its truck or walked along the road on the right-hand side thereof without keeping any lookout whatever for cars, and, therefore, the accident was not caused by negligence on the part of Norman but by the negligence of the deceased; defendant further pleads that if its driver (Norman) was in any way negligent, which is denied, in that event the negligence of deceased contributed to the accident to such extent that it would not have occurred without it, and pleads such contributory negligence in bar of plaintiff's suit.

The case was tried before a jury which rendered a verdict for plaintiff in the sum of $18,494.50. A motion for new trial was filed and denied. Defendant appealed.

Plaintiff and husband, accompanied by plaintiff's mother, had been to Ringgold in Red River parish on December 29, 1930, and were returning home in their Chevrolet coach automobile. The night was cold and clear. On account of the water boiling in the radiator the car developed heat to such extent as to interfere with its running. It was stopped at the store of one Joe Peter, five miles below Bossier City, on the concrete highway, and fresh

water put in the radiator, but it could not be again started either by the self-starter or by cranking. Mr. Locke and an Italian boy by the name of Vincent Marsiglia pushed the car up the road the distance of some three blocks and the motor began running. The boy rode the rear bumper to the next filling station, about three miles, and, as the car's speed was reduced, he jumped off. Mr. Locke was left on the road at the point where the car resumed running. J. B. Brocata, who operates the filling station where the boy jumped from plaintiff's car, after the lapse of about five minutes, started with the boy down the road, in his car, to take him home and when they were about one-quarter of a mile from Joe Peter's place they were hailed by Norman who stated that he had run over and killed a man.

Mrs. Locke, the plaintiff, for reasons not entirely satisfactorily explained in the record, left her husband on the road and drove her mother home, a short distance below Bossier City, and returned to look for Mr. Locke. She proceeded down the highway to a point south of where her husband's body was lying and returned up the road. She saw the body of Mr. Locke but did not recognize it as that of a human being. She rejoined her mother and very soon thereafter learned that Locke had been killed.

Norman, the truck driver, was the only eye-witness to the tragedy. He testified that he was driving north at the rate of 30 miles per hour and just before reaching the scene of the accident he observed some automobiles moving south towards him; that the first two of these oncoming cars were running at approximately the same rate as was his truck, the second being behind the first one about 75 feet; that the lights of neither car affected his vision and as he passed the second car he then discovered that a third one was approaching at a distance of from 50 to 75 feet from the second, with very bright lights, and going at the rate of 50 miles per hour. These lights affected his vision to such extent that he could not see beyond the third car and at the moment he passed this car deceased was struck and killed instantly. Norman did not see deceased until his body was hurtled over the right fender of his truck. He gave no signal of his approach. The lens of the right headlight was broken, the light knocked upwards out of line, the right fender was slightly bent, and a dent in the cowl back of the hood, were the only damages inflicted on the truck as a result of the impact. The truck was brought to a stop 50 feet from the place of collision on the right-hand side of the road. The body of deceased was found on the right shoulder of the road, at right angles to it, with head about three feet from the concrete. The glass from the broken lens was deposited on the concrete 15 feet north of the body, while a few drops of blood were seen on the concrete, opposite the head of deceased, some two or three feet from the edge of the road. The lights of defendant's truck were in good condition and Norman states that they cast a beam that enabled him to see 150 feet ahead, but he did not see deceased until he was struck. He admits that he did not take notice of the side of the road as he moved along but could see the portion of the road where he was going. Brocata testified that Norman said to him, when he had hailed him to stop at scene of accident, "I didn't see the man until after I hit him on account of the bright lights." Norman testified that his truck at no time left the concrete road. The record does not disclose the location of the wounds, if any, on deceased's body;

nor does it establish in which direction he was going when killed, if moving at all. It is not shown whether the place of accident was above or below the spot where his car left him after being pushed. Norman stated that as he was meeting these three cars he disengaged the clutch of the truck and pressed the service brake slightly, but in view of the fact that the truck traveled fifty feet after the accident before being stopped indicates very strongly that his rate of speed had not been reduced appreciably. The truck's mechanism was so adjusted that it could not run more than 35 miles per hour and it is shown that if moving at the rate of 30 miles per hour it could be brought to a stop within 35 feet.

The effect brilliant lights of an approaching automobile have on the vision of one operating a car meeting it is well and generally known. For an appreciable period it is impossible to discern objects beyond you and especially if on the right-hand side of the road. The duty of an operator under such conditions is well defined by law and the rule is supported by reason and common sense.

The evidence leaves no doubt in our mind that Norman, as the automobiles approached him, did what many drivers do under like circumstances. He continued moving at about the same rate of speed and presumed his line of travel to be clear. Under the conditions confronting him at the time it was his duty to either stop his truck or bring it under such control as to enable him to stop it instantly, until the momentary danger had passed. On the other hand, if his failing to see Locke on the roadside was not due to the lights of the approaching cars, it follows as a logical deduction, since his own lights were good, that he was not keeping a proper lookout for pedestrians, and did not see that which he could, and should, have seen, under the circumstances. In either case there is liability of his employer.

"It is gross negligence for the driver of an automobile to run his machine on a city street when the mist, rain, and blinding headlights of another car made it so that he could not see." Ward v. Donahue, 8 La. App. 335; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194; Pepper v. Walsworth, 6 La. App. 610.

"Failure of motorist, blinded by headlights, to reduce speed of 30 miles an hour held proximate cause of collision with parked truck." Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469.

"He will be presumed, in case of accident, to have seen what he should have seen in the performance of his duties." Kelly v. Schmidt & Zeigler, Ltd., 142 La. 91, 76 So. 250.

An endless list of authorities could be cited sustaining the principles enunciated in the decisions above cited, but we deem these sufficient.

Deceased had the legal right to travel on the concrete highway and had the right to assume that operators of automobiles would observe the law and rules of the road and keep a proper lookout for pedestrians. Act No. 296 of 1928, secs. 4, 5, 19, 20, 50, 52; Pepper v. Walsworth, 6 La. App. 610; Kelly v. Ludlum, 9 La. App. 58, 118 So. 781.

"One who walks on the street near the curb because of the lack of sidewalks is not guilty of contributory negligence if he is hit by an automobile merely because of his being on the street. Pedestrians have the same right to the use of public streets as motorists." Ward v. Donahue, 8 La. App. 335.

"One who walks along a roadway does not have to maintain a lookout for automobiles approaching from his rear." Kelly v. Ludlum, 9 La. App. 57, 118 So. 781;

Jacoby v. Gallaher, 10 La. App. 42, 120 So. 888.

Defendant contends that inasmuch as the deceased was walking on his right-hand side of the road, when killed, in violation of the highway law (Act No. 296 of 1928, sec. 20), his own conduct in this respect was the proximate cause of the accident and his own contributory negligence bars recovery.

This contention could be quickly disposed of with the statement that the evidence does not disclose in which direction deceased was traveling when killed. The place where he was killed was about one-quarter of a mile from Joe Peter's store and it is shown that plaintiff's car was pushed some three blocks from this store when it commenced to run, and where deceased was left. It therefore follows that deceased had not traveled far, and had probably stood still, during his wife's absence awaiting her return for him. The mere fact that deceased was guilty of some negligence does not necessarily bar recovery unless such negligence was the proximate cause of the injury. Pepper v. Walsworth, 6 La. App. 610.

It has often been held that it is negligence for one to leave his automobile parked on a street without lights thereon, but it does not follow that one doing damage to the parked car can escape the consequences of his own act when the injury was occasioned by active negligence, such as failure to keep proper lookout or running at an excessive rate of speed in dust, mist, or in the face of blinding lights of another automobile.

It is almost certain Mr. Locke did not know Norman's truck was approaching him from the rear (assuming that he was going north), because the lights of the cars coming from the north illuminated the surroundings so that the reflection from the lights of the truck did not attract his attention; and, again, the gears of the truck were disengaged, according to Norman's testimony, thus eliminating the noise usually caused by an engine running in gear.

It is obvious that had Norman observed the mandatory requirements of the highway law his truck would not have run into and killed Locke; and the fact that Locke may have been on the wrong side of the highway was not the proximate, but a very remote, cause of the accident.

The vicinity about the spot where Locke was killed is thickly settled on both sides of the highway and this condition obtains into Bossier City, five miles distant. Filling stations and stores are quite numerous. Norman was well acquainted with the highway and frequently drove over it for his employer, the defendant, gathering and delivering laundry. He knew, or should have known that in the winter time, when the shoulders of the road were wet and cold, pedestrians used the concrete highway to travel on. Every reason was present to impress him with the importance of exercising ultra-precaution to avoid possible collision with people or stock that might be upon the road at night, and at the first appearance of danger he should have adopted the course necessary to insure safety to himself and to others.

"The chauffeur of an auto truck, driving over that portion of a public highway which is ordinarily used by vehicles going in the opposite direction, must keep a very vigilant watch ahead for vehicles and pedestrians. He should signal his approach as a warning; and, when it is dark, or nearly so, the lights on his vehicle should be burning. He should proceed slowly and cautiously; and, at the first appearance of danger, he should take proper steps to avoid it, and, if necessary, stop

his machine, and even the motor, when it is necessary and practicable. He will be presumed, in case of accident, to have seen what he should have seen in the performance of his duties." Kelly v. Schmidt & Zeigler, Ltd., 142 La. 91, 76 So. 250.

Deceased was 47 years old when killed, and had a life expectancy of 23 years and eight months. He and plaintiff were married in the year 1909. There is no issue of their union. His health was good. It appears that he was not successful in business on his own account, though, at times, received good wages for his services to others. When killed he and plaintiff were operating together a business that averaged them approximately $150 per month profit. He left no property and carried no insurance. Plaintiff depended upon the advice and guidance of deceased during their marriage and had only a limited experience in business affairs.

It appears from the evidence that Mr. Locke and plaintiff lived happily together; that their married life was practically free from quarrels and unpleasantness; that they enjoyed the companionship of each other and were almost constantly together. Plaintiff's grief at the loss of her life companion is clearly shown to be great. She has no means of a livelihood save from her own efforts.

The jury that tried this case gave plaintiff judgment for an amount we think excessive. All things considered, we believe this judgment should be reduced to $10,996.50. This amount gives plaintiff $10,000 net. The balance will cover the cost of burial expenses of deceased.

For the reasons herein given, the judgment appealed from is amended by reducing it to $10,996.50, and as thus amended, it is affirmed. Costs of appeal to be paid by plaintiff; all other costs to be paid by defendant.