**SAVOIE v. WALKER.**

No. 1875.

Court of Appeal of Louisiana.
First Circuit.

Oct. 5, 1938.

Griffin T. Hawkins and J. J. Tritico, both of Lake Charles, and E. S. Muse, of St. Francisville, for appellant.

Borron, Owen & Borron, of Baton Rouge, and James H. Kilbourne, of St. Francisville, for appellee.

OTT, Judge.

Plaintiff sues for damages in the sum of $28,405 for personal injuries received by him on November 23, 1935, when he was struck by an automobile driven by Magruder Walker, the minor son of the defendant. The accident happened while plaintiff, a member of the C. C. C. camp located a short distance north of St. Francisville, together with four or five companions from the camp, was walking south on Highway #61 on their way to St. Francisville about 7:30 P. M. Plaintiff sustained a comminuted fracture of the right femur, a compound fracture of both bones of the right leg between the knee and ankle, an injury to his right knee, and other injuries set out in his petition.

Robert H. Campbell, a member of the group of C. C. C. boys walking to town that night with Savoie, was also struck by the same automobile and received injuries less serious than those received by Savoie. Campbell sues for damages in the sum of $1,730, and the two cases were consolidated for trial in the lower court, but separate judgments were entered in each. The allegations in both petitions are the same, except as to the nature and extent of the injuries received and the amount of damages claimed. What is said in this opinion on the question of liability, vel non, will also apply to the case of Campbell against the same defendant, but separate comments will be made on the nature and extent of the injuries received, and separate decrees will be entered in each case.

The petition in each case charges that the defendant's minor son was driving an automobile south on the paved highway about one mile north of St. Francisville; that plaintiff and several companions were walking south down said highway, on the east side, and entirely off the eighteen foot paved portion of the road; that the automobile driven by defendant's son was suddenly driven off the concrete portion of said highway, striking plaintiff, as well as two of his companions; that the car driven by defendant's said son was going in the same direction as plaintiff and his companions, and just before the said car reached him and his companions, it was over on its right side of the highway, but when said car was near plaintiff and his companions walking on the east or left shoulder of the road, the car was suddenly swerved to its left and traveled across the paved portion of the road and struck plaintiff and two of his companions, who at the time were well to the left and off the paved portion of the road; that the driver of said car did not stop after striking plaintiff and his two companions; that there were no vehicles or obstructions at the point where plaintiff was struck, and that said Magruder Walker "deliberately and intentionally left his proper, or right hand, side of the paved portion of the highway, with the view of either striking petitioner and his companions or frightening them into believing that he was intending so to do."

The allegations are also made that said Magruder Walker was driving said car at a reckless and excessive rate of speed, in excess of fifty miles per hour; that he failed to sound his horn or give any warn-

ing that he intended to dart suddenly from his side of the road and cross over and strike plaintiff and his companions on the left side of the highway.

Defendant admits that the car which struck plaintiff was driven by his minor son who was then living with him; but he denies that his said son was guilty of any negligence. He alleges that his said son was driving south on said highway in company with a companion at a reasonable rate of speed; that his said son approached another car going in the same direction at about 30 miles per hour, and, desiring to pass the car in front of him, his said son guided his car gradually to the left side of the road, at the same time sounding his horn as a signal to pass said car to the left; that the lights on his car were burning brightly, and his said son observed that the traffic lane on his left was clear within the radius of his headlights; that as the automobile driven by his said son passed to the left traffic lane and was passing the other car, there appeared immediately in front of his said son several pedestrians who occupied a portion of the left traffic lane, and at a distance too close for his said son to stop his car; that his said son pulled his car back to the right to avoid striking said pedestrians, and that the rear part of his car swung around and came in contact with one or more of said pedestrians.

In the alternative and in case it is found that his said son was guilty of any negligence, defendant alleges contributory negligence on the part of the plaintiff in that he was walking on the paved portion of the road; that he failed to heed the horn and lights from the oncoming car, and did not use proper means for his own safety.

An exception of no cause of action was filed by the defendant which was referred to the merits and overruled at the time the case was decided on the merits. The judgment below rejected the demands of the plaintiff, and he has appealed.

██ The exception was properly overruled. The allegations of the petition show that the accident was caused solely by the deliberate and intentional act of defendant's son in driving his car from the right side of the road over to the left side, striking plaintiff, and in the careless and reckless manner defendant's son operated the automobile which he was driving. The factual situation set up in the petition, which must be accepted as true for the

purpose of the exception, does not show any act of negligence or want of care on the part of plaintiff that could have contributed to the accident.

██ Defendant's minor son being capable of operating on the public highways such a dangerous instrumentality as a motor vehicle, he is capable of committing an offense or quasi offense for which his father with whom he resides is responsible under the plain provisions of Article 2318 of the Civil Code. Marionneaux, Tutrix, v. Brugier, 35 La.Ann. 13; Sutton et al. v. Champagne et al., 141 La. 469, 75 So. 209.

██ After a considerable part of the evidence had been taken, defendant's counsel objected to the introduction of any evidence to show actual negligence on the part of defendant's minor son for the reason that the petition alleges that the acts of said minor were willful, deliberate and intentional; that under such allegations of intentional and deliberate wrong-doing on the part of said minor, simple and ordinary negligence cannot be proved. The testimony was admitted subject to the objection. We think the evidence was properly admitted.

While the petition does charge that defendant's son deliberately and intentionally left his right side of the road and came over on the left side with the view of either striking plaintiff or frightening him, there are other allegations, such as the failure to sound his horn and give a warning and his excessive speed, which are not alleged to have been willful, deliberate and intentional, and these latter acts, according to the petition, were merely careless, or at most, grossly negligent. However, if it be construed from the allegations of the petition taken together, that all of the acts of defendant's son which caused or contributed to the accident were willfully, deliberately and intentionally done, as contended by defendant's counsel, still the evidence was admissible to prove these acts.

Under our law, we have no such technical rules of pleading as prevail in some states which still retain part of the common law system of pleading. In an action of trespass under the common law system, the injury for which the action is brought must have been committed with force, actual or implied, or the injury resulting from the act must have been immediate, and not merely consequential. Any act done willfully and deliberately with the intention to injure another would give rise

to an action in trespass, whereas, an act done or omitted through simple negligence of either omission or commission would support an action on the case. As an injury cannot be caused willfully and deliberately and merely negligently at the same time, the action of trespass based on the willful act could not be joined in the same count with an action on the case based on simple negligence. 9 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., page 246, § 5985.

These distinctions are not recognized in the civil law. Article 2315 of our Civil Code provides that every act whatever of man (whether deliberate, intentional, or merely negligent) that causes damage to another, obliges him by whose *fault* (not merely negligence) it happened to repair it. The act does not give rise to an action unless it is coupled with a fault. This fault that causes the damage, or accompanies the act causing the damage, may be deliberate, willful and intentional (in which case it may be a criminal offense) or it may be an act arising from mere negligence.

We quote from the first paragraph of the syllabus in Eclipse Towboat Company v. Pontchartrain R. R. Company, 24 La. Ann. 1, as follows:

"In the rule that 'every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it' (Rev.C.C. 2315), the phrase 'every act' is controlled by the word 'fault,' and it results that the party bound must be in fault, that is to say, his conduct must be, in the general sense of the word, unlawful."

The fault which gives rise to an action in favor of another who has suffered damage by reason of it is divided into three degrees; the gross, the slight and the very slight fault. Only the first two degrees of fault give rise to an action for damages. Civil Code, Article 3556, part 13. Obviously, under our law, it is only necessary to set out the acts constituting the fault, and the injured person has a right to prove the acts whether they prove a willful and gross fault or merely set out a slight fault.

The word "fault" as used in the Codal article is more inclusive and comprehensive than the word "negligence" implies. If we refer to Article 2316 of the Civil Code, we find that a person is responsible not only for the damage which he occasions by his act, but he is also responsible for the damage which he causes by his negligence, his imprudence, or his want of skill. And by the next article, 2317, we are made responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. And it is by virtue of this general responsibility for the acts of others under certain circumstances, that the father, or after his decease the mother, is responsible for the damage occasioned by his minor, or unemancipated children, residing with him. It is the act of the minor causing the damage, where the act involves fault on the part of the minor, whether the act was done willfully and intentionally or merely through negligence, that determines the responsibility of the father.

While the general rule of the civil law is to hold a person liable in tort actions only in those cases where the acts of the person sought to be held involve some fault on his part, yet by reason of modern social and economic influences there have arisen various forms of liability where no direct fault of the person causing the damage is necessary to be alleged and proved. These actions have grown out of judicial interpretations as well as from statutory enactments. For an interesting and instructive discussion of this subject, reference is made to an article by Dean Rufus Harris, of Tulane University, in Volume 6, Tulane Law Review, beginning at page 337, entitled, "Liability without Fault."

On page 361 of this Review, referring to the Roman system of law that prevails in Continental Europe, other countries and in Louisiana, Dean Harris says there is a great generalization of the law of torts that liability is based upon fault. He then quotes from the codal provisions of tort law in Louisiana and other countries having the Roman system, and, after discussing some of the features of these generalizations in the civil law, he says at page 365:

"The generalization of the Lex Aquilia goes further than ours. In the common law there may have been worked out a generalization as to negligence, but common law lawyers have not yet indulged in a generalization that comprehends both intentional and unintentional conduct resulting in liability. The Roman law has the same distinction that the common law has between intended injury (dolus) and un-

intended injury (culpa) but as Buckland points out the line between dolus and culpa· is not as sharp as it looks. So far as the Lex Aquilia is concerned the distinction between dolus and culpa could be wiped out and both types of injury subsumed under the statute."

The author then refers to a case decided by the United States· Supreme Court, Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, and makes this very pertinent comment on that case:

"In this connection it is interesting to note that the Supreme Court of the United States very recently reached exactly the same result without adverting to this Romanism. A statute imposed responsibility on employers for injuries inflicted 'negligently' by fellow servants in the course of employment. A servant· deliberately injured another servant in order to stimulate him to greater activity in his employment. The master sought to excuse himself on the ground that the injury was not inflicted 'negligently' but wilfully. The Supreme Court, however, affirming the New York Court of Appeals, had no difficulty in finding as a matter of genuine interpretation that it was the desire of the Congress to use the term 'negligently' as connoting a wider generalization than usual, the same as was pointed out as being the way the Romanist jurists use the word 'culpa' in a broad sense. It is hardly necessary to say that this broad meaning is attached to the· word 'faute' as it is used in the Louisiana and French Codes."

We have no difficulty in reaching the conclusion that young Magruder Walker was guilty of gross negligence. The boy was driving too fast and was not sufficiently observant of the way ahead. A preponderance of the evidence shows that the boy was passing another car at the time of the accident, and the evidence justifies the conclusion that this plaintiff, Savoie, and the plaintiff in the other suit, Campbell, were walking on the left edge of the concrete when they were struck by the Walker car. Both of these plaintiffs were off the pavement and on the shoulder of the road when they fell, and it is hardly possible for them to have been knocked from three to four feet on the pavement entirely off onto the shoulder some two or three feet. While the testimony of the two plaintiffs is to the effect that they were on the shoulder of the road when struck, yet the preponderance of the evidence indicates that they were on the edge of the pavement. The testimony of Kittrell, taken on behalf of defendant, leads to no other conclusion but that defendant's son came across the pavement to his left in passing the car and struck Kittrell while he had one foot on the pavement and one foot on the shoulder of the road. This witness says that the bumper or running board of the Walker car struck the calf of his right leg, and the handle of the left door of the car caught in his right pocket. Obviously, if this is true, young Walker drove almost off the pavement on the east side in making the turn to his left.

Kittrell says that both plaintiffs were walking five or six feet ahead of him, and as they were struck immediately after Kittrell was struck, with the car going in the same general direction, it is clear that plaintiffs were also near the east edge of the pavement. They could not have been three or four feet out on the pavement, as some witnesses testified, as the front of the Walker car would have struck them from behind, and they would have been knocked toward the front, instead of to the left. When the side of the car brushed Kittrell on the east edge of the pavement, the front of the car was passed him and practically on the plaintiffs in front of him. Act 21 of 1932, section 3, rule 7, requires the driver of an overtaking car desiring to pass another car going in the same direction to give audible warning of his intention to pass, and requires the driver of the overtaking car before entering the left lane of traffic to ascertain that this left lane is clear of traffic and the way ahead is visible for a sufficient distance to permit such passing to be made in safety. And whenever an accident occurs under the circumstances of passing another car on the left, the responsibility therefor shall rest prima facie upon 'the driver of the passing car.

Young Walker did not sound his horn or give any signal that he intended to get into the left lane of traffic, his wrong side of the road. It is true that he and his young companion testified that the horn was blown, but no other witness heard a horn, and we conclude that no horn was blown. Young Walker was driving around fifty miles per hour; his lights were in good order, and there is no reason why he could not have seen these boys walking on the road in front of him for at least 200 feet away. Had he seen them on the edge

of the road as he should have, there is no reason why he could not have slowed down his speed and brought his car under control. He was not facing the light of any on-coming car, nor was there anything to obstruct his vision. He must be held to have seen what he should have seen.

Nor do we think either one of the plaintiffs was guilty of any contributory negligence. They were walking on the left edge of the pavement, that part of the road on which the law requires them to walk. Act 21 of 1932, section 3, Rule 11 (d).

As before stated, young Walker gave no warning of his intention to swerve his car over to the left side of the road into the left lane of traffic. While plaintiffs must have seen the reflection of the lights from the approaching cars from the rear, yet they had no reason to believe that either one of the approaching cars would suddenly and without warning pull over to the left side of the road, but, on the contrary, they had a right to assume that the drivers of these approaching cars would stay on their right side of the road, until and unless proper warning was given of a different intention. We know of no law or rule of the road that requires a pedestrian walking on the left side of the road as the law requires to keep constantly looking back for following traffic on the other side of the road. He is required to be looking forward for cars meeting him in front. A car approaching a pedestrian from his front will be on its side of the road, and the pedestrian is required to keep a careful lookout for such approaching cars. But a car approaching from his rear on the left side of the road is on its wrong side of the road, and the driver of such a car is required to be vigilant and cautious because he is occupying his wrong side of the road.

On this point, we quote from 2 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Ed., page 472, section 1416, as follows:

"A pedestrian walking on the left-hand side of the paved portion of the road and facing the on-coming traffic is in a safer position than a person walking on the right-hand side of the highway with his back to the on-coming traffic. By taking the left side, he can proceed without the inconvenience of looking around, though he may walk on either side, and the fact that, when injured by an automobile he is walking, on the left-hand side of the highway, does not of itself constitute contributory negligence. In such position he may assume that vehicles in his rear will obey the law of the road.

"Indeed, some statutes require pedestrians when walking longitudinally on the highway to keep to the left side, especially at night, and a violation thereof will preclude recovery by them for injuries proximately caused thereby, though the question of their due care is usually for the jury.

"In proceeding on the left side, if an automobile driver coming at a dangerous rate of speed turns suddenly toward him on a wide road, it is reasonable for the pedestrian to assume that, if he stands still, the driver will deflect the car enough to avoid him, and he is not contributorily negligent as a matter of law in standing still."

See, also, Rawls v. Red River Lumber Company, La.App., 152 So. 337; and Locke v. Shreveport Laundries, Inc., 18 La.App. 169, 137 So. 645.

Savoie was a patient in the U. S. Marine Hospital in New Orleans from November 24, 1935 to April 5, 1937. The compound fracture of his right hip required an operation doing what is called in medical terms a debridgement and partial suture. A persistent sinus developed at the site of the hip fracture, and in August, 1936, an operation was performed, and the partially absorbed head and a portion of the neck of the femur, together with some loose bone fragments were removed. The hip injury resulted in considerable instability of the hip movement.

The compound fracture of the bones of the right leg below the knee seems to have healed, and there appears to be no permanent effects left from this fracture. Savoie also suffered some tearing or relaxation of the ligaments of the right knee, and this injury has left him with an instability in his right knee. He can walk with the aid of a leg brace and cane, but his gait is impaired. His right lower extremity shows about 1½ inch shortening. The motions of his right hip are limited, estimated by one of the doctors at 50%. The right knee shows moderate to marked sub luxation necessitating the wearing of a leg brace. The injury to the right leg is permanent, but one of the doctors expressed the opinion that in time Savoie will get better function of his right hip and knee.

He is unable to do hard manual labor, the only kind of labor he is fitted to do.

The plaintiff is just above majority and has a long life expectancy. In the recent case of Meaux v. Gulf Ins. Co. et al., 182 So. 158, we awarded damages of $4,000 for physical injuries less serious than those suffered by the plaintiff in this case. We think an award of $5,500 for the physical injuries, pain and suffering and loss of earning capacity, will be proper and do substantial justice. In addition to this amount, plaintiff is entitled to the loss of his wages for nine months at $30 per month as he claims in his petition, as he was in the hospital for a longer period than nine months.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff, Arthur Savoie, do have and recover judgment of the defendant, Levin M. Walker, in the full sum of $5,770, with legal interest thereon from judicial demand, and for cost in both courts.