Plaintiff appealed from judgment that sustained exceptions of no cause and no right of action and dismissed his suit. The exceptions were adjudged from the allegations of the petition.
Plaintiff, in the early part of the evening of December 19, 1945, while driving his own Chevrolet pick-up truck westerly on the concrete highway between the Village of Alto, in Richland Parish, and the Boeuf River, violently collided with a disabled, stationary trailer belonging to the defendant, F. Strauss and Son, Incorporated, and sues to recover a large amount for injuries to himself and for damages to the truck. He alleges that just north of the Village of Alto the highway makes a sweeping curve westerly or to the left for an automobile proceeding in a northerly direction, following which the highway is straight and continues so for a considerable distance toward the bridge over Boeuf River; that a motorist's forward view of the highway, while in said curve, is obscured by the road's curvature and objects on the highway beyond the end of the curve cannot be seen by him until he emerges therefrom. The gravamen of plaintiff's petition is reflected from paragraphs four and five, which we quote, to-wit:
"Now your petitioner is informed and believes, and so believing, avers, that some time prior to night-fall on the afternoon herein referred to, a large truck and trailer owned by F. Strauss Son, Inc., defendant herein, and then being operated by one of its regular employees, acting in the course and within the scope of his employment, had struck a mule or other animal on the highway at a point some several hundredfeet north or west of the curve hereinabove referred to, the impact of which had thrown the truck partly into the ditch on the northeast or right side of said highway; that at the time of said accident, said truck had been proceeding in a northerly direction toward Monroe and *Page 85 
that after said accident, it came to rest in a 'jack-knife' position with the trailer of said truck angling across the entire north or northeast half of said highway and the cab of said truck in the ditch, but 'jackknifed' in such a position that the front end and headlights of said truck were pointed back toward Alto in the direction from which it had been proceeding; that said truck had been in said position for a length of time unknown to your petitioner but which your petitioner is informed and believes, and so believing avers had been prior to night-fall, and that the driver of said truck, had been waiting with his truck in that position since prior to the falling of darkness without having taken any steps to remove his truck and trailer from the highway, and without having put out any signal flags, flares, or any other warning signs to indicate the presence in the highway of said truck or the fact that it was obstructing the traffic on said highway; in this connection, your petitioner avers that, after dark, the said driver had turned on the lights of his truck, but that the tail light on said trailer, if burning, was pointed across the road in a general southerly of southwesterly direction and was not visible to the drivers of automobiles proceeding along the highway in either direction, and that although the headlights of said truck were burning, nevertheless they, as aforesaid, were off the road and headed back toward Alto in the direction from which said truck and trailer had been approaching, and instead of giving any warning evidence of the presence of the trailer in the roadway, actually constituted an additional hazard for motorists coming from Alto by creating the impression that they were headlights of an automobile or other vehicle about to enter the roadway from a ramp or side road off to the right.
"That on the particular date and at the time hereinabove referred, your petitioner, driving his Chevrolet pick-up truck as aforesaid, with Albert Johnson as a guest and passenger therein, was proceeding as aforesaid on said Louisiana State Highway No. Fifteen (15) coming in a northerly direction toward Monroe; that although the time was early evening, it had been completely dark for an appreciable length of time and the lights on said Chevrolet pick-up truck had been turned on and were burning, as were the lights of other automobiles coming from the opposite direction; that petitioner was driving said Chevrolet pick-up truck at a moderate speed and had proceeded around the curve in the highway described in the preceding paragraph; that as he proceeded around the curve, otherautomobiles were met coming in the opposite, or southerlydirection with their headlights burning also, and after hereached the straight part of the highway north of the curve,the headlights of other oncoming automobiles could also beseen; that just as the first of said oncoming automobiles hadbeen passed, your petitioner saw for the first time,immediately in the path of his truck, and occupying the entireportion of the roadway on which his pick-up truck wastraveling, the trailer body of the large trailer truckbelonging to defendant, F. Strauss Son, Inc., as hereinabove described, which was stationary in the road at an angle across the highway, occupying the entire north or northeast half of the highway, which was the right-hand side of the highway, considering the direction in which petitioner was traveling, and extending also partially over the black center line of said highway; that said trailer was not visible to, and could not beseen by, your petitioner until after he had passed theheadlights of the automobile which was then approaching him, atwhich point he was almost upon said truck and trailer; and that although he swerved his truck to the left side of the highway in an effort to go around said truck and trailer, and made every effort to avoid striking the trailer, he was unable completely to miss it and the end of said trailer was struck by the right-hand side of said petitioner's truck, which impact caused petitioner to lose control of his truck and threw said Chevrolet pick-up truck into the path of a second oncoming automobile, causing both said automobile and the truck to overturn on the highway, resulting in injury and damage to your petitioner as will be hereinafter set forth."
Following said paragraphs plaintiff alleges that the sole and proximate cause of the accident was the negligence of defendant's *Page 86 
truck driver in six different respects, an epitome of which follows, viz.:
Not having made any effort to remove the truck from the highway, and thereby allowing it to become a hazard to traffic after it collided with the animal; not placing signal flags or flares nor performing any other act to warn motorists of the presence of the vehicles; in having the headlights of the truck burning in such position as to create the impression of an automobile about to enter the highway from the right; and, in general, failing to conform to the laws of the state and to the dictates of common prudence designed to protect the rights of those lawfully using said highway.
From the allegations pertinent thereto, we conclude that the curve in the road south of the locus of the collision did not contribute to any degree to it. It is alleged that defendant's truck collided with an animal at a point several hundred feet north and west of the curve, and, inferentially, from the impact the truck and trailer stopped there, angling across the northerly or his right side of the highway. He further alleges that after he had reached the straight part of the road and after having passed the first of several on-coming cars, he for the first time saw the trailer body of the large truck at a short distance ahead of him. Therefore, it is clear from the allegations of the petition that for a considerable distance south of the locus of the accident, possibly several hundred feet, the road is straight. Plaintiff had traversed this tangent when the accident occurred. The only excuse available to him for running into the trailer is that its presence was obscured because of the reflections of the headlights of cars coming toward him. When he did see the trailer it was to near he had not the time to avert colliding with it. In other words, at the time, he was running at a speed too great to stop within the distance illumined by the truck's headlights. He does not allege that he reduced his speed to any extent while blinded by the lights of the on-coming cars, nor does he aver that he changed his lights from bright to dim.
The legal question tendered herein is not new. It has been considered and passed on by this court several times recently, and also by the other Courts of Appeal and the Supreme Court, during the past decade.
The last case decided by this court in which the legal principle involved herein is discussed at length, is that of Hogue v. Akin Truck Line et al. La. App., reported in16 So.2d 366, 368. The facts of that case are quite similar to those of the present case.
[1] In the Hogue case plaintiff's car collided with a large stationary truck parked over the middle of the highway. No flares were placed to warn motorists of the presence of the truck and there were no burning lights on it at the time of the collision. The excuse for running into the truck was that the night was dark and visability poor on account of mist, fog and rain. An exception of no cause of action was sustained and the suit was dismissed. In the opinion we cited numerous cases upholding the principle that as a general rule, it was negligence barring recovery of damages for a motorist to drive his car at a speed too great to bring it to a stop within the distance illumined by its headlights. We also cited and discussed cases in which it was held that due to exceptional facts, conditions and circumstances, recovery was allowed to motorists who drove their cars into the rear end or side of another motor vehicle in the nighttime. Appellant cites and relies upon these exceptional cases. We are quite sure the facts of the present case, as disclosed from the petition, do not make of it an exception to the general rule.
In the Hogue case, inter alia, we said:
"The Highway Regulatory Act (No. 286 of 1938, § 3, Rule 15 (a) expressly requires of the operator of a truck left parked upon the highway at night for any reason, that he see to it that its lights be on, and flares, fore and aft, be set out in order to apprise the traffic of the vehicle's presence. It certainly is negligence to not observe these requirements when it is possible to do so. The same Act (Rule 4 (a) also makes it *Page 87 
the duty of a motorist to drive at all times carefully and at a reasonable rate of speed, taking into consideration all prevailing conditions and circumstances, including traffic and the road's physical condition. The Act declares that if he fails to observe these rules he is deemed prima facie to be at fault in any accident proximately flowing therefrom.
"It has been repeatedly held that when visibility is materially impaired because of smoke, mist, dust, etc., a motorist should reduce his rate of speed to such extent and keep his car under such control as to reduce to a minimum the possibility of accident from collision; and as an extreme measure of safety, it is his duty, when visibility ahead is not possible or greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. Locke v. Shreveport Laundries, Inc., supra [18 La. App. 169, 137 So. 645].
"Because the night was dark does not excuse plaintiff for running into the truck; and we do not think that because visibility was poor on account of the named atmospheric conditions, he should be absolved from fault as a cause of the accident. The function of bright lights on an automobile is to illumine the surface of the highway ahead so that the presence of dangers to traffic may be revealed in time to avert an accident. It is the driver's duty at all times, especially under conditions as alleged by plaintiff, to be on the alert; to steadily watch road conditions ahead of him, as they are revealed foot by foot, and to keep his car under such control and maintain such speed as is commensurate with conditions and circumstances. The greater the known hazards the greater should be the degree of care exercised."
The following quotation from the opinion in Woodley Collins v. Schusters' Wholesale Produce Company, Inc., reported in170 La. 527-530, 128 So. 469, 470, is pertinent:
"We are not prepared to say that the Court of Appeal erred in its ruling that the proximate cause of the accident was the failure of the driver of the plaintiff's car to reduce his speed, and to have the car under such control as to be ready to stop instantly, when he became blinded by the headlights of the approaching car. The doctrine is stated in 42 C.J. 929, § 640, thus:
" 'A speed which might be reasonable and proper under ordinary circumstances may be excessive and improper where the driver's view of the highway is in any way interfered with, as where he is confused or partly blinded by the headlights of an approaching vehicle, or is driving through fog, smoke, or dust, or his windshield is covered with sleet and snow, or rain.' "
[2] In the case of Odom v. Long, La. App., 26 So.2d 709, this court applied the quoted principle. What was said on the subject is disclosed from Section 2 of the Syllabus. It reads: "The duty of a motorist when his vision is obscured by the lights of an approaching automobile, or for any other reason, is to reduce his speed and bring his automobile under such control as to be able to stop the automobile instantly should conditions require that such action be taken to avert a collision."
[3] Regardless of the obvious negligence of defendant's driver, in the respects charged, recovery by plaintiff for the damages he sustained by and through the collision is barred because of his own manifest contributory negligence. As said in one case, we repeat that plaintiff's negligence was active in character while that of defendant was passive.
For the reasons herein assigned, the judgment appealed from is affirmed with costs. *Page 88