ELLIS, Judge.
This is a suit for damages which arose, out of an automobile accident, which occurred at about 9:00 o’clock P.M. November 13, 1953, on Louisiana Highway 46 about. 6 miles south of Albany, La. One of the plaintiffs, Cutrer, was driving his automobile when it collided with the rear of a vehicle owned by Adrian M. Beckham, the defendant’s insured. One of the plaintiffs is the insurer of the Cutrer vehicle and he joined the suit as a party plaintiff, seeking the deductible portion of his policy. His *744 insurer claims the amount paid by it, $744.-06, to which amount it was subrogated.
The defendant was the insurer of the Beckham car, and judgment below was rendered in favor of the plaintiff as prayed for. The defendant has appealed.
At the site of this accident the highway is straight and the night upon which it occurred was clear, but dark. The road was a two-lane 18 foot wide black topped highway, with shoulders of approximately 2 feet on each side.
Both of the vehicles involved were headed in a northerly direction and it is admitted the Beckham vehicle was parked on the highway and that the Cutrer vehicle struck it in the rear. Cutrer stated he was proceeding along the highway at about 50 or 60 miles per hour when he approached two cars coming from the opposite direction; that he dimmed his lights and the first approaching car dimmed its lights, but that the second car did not and just as he was passing this last car, the lights of which had momentarily impaired his vision, he suddenly realized he was within a very few feet of a parked car and that he could not help striking it; that it had no lights or warning signals of any kind upon it. He further testified that after the Beckham vehicle was struck it rolled a short distance down the highway, its lights suddenly were turned on and it pulled to the right and into a ditch along the highway.
Beckham testified that he had stopped his car because he thought one of his rear tires was going flat, got out of the vehicle and went towards its rear to see what the trouble was; that he did not notice any of the approaching vehicles, from either direction, and that all of his lights were operating properly and were turned on all of the time.
The plaintiffs alleged that Beckham was guilty of gross negligence, which was the proximate cause of the accident, in parking his car on the highway at night without any lights or warning signals; that he was not keeping a proper lookout for other traffic and was ’negligent in failing to warn any approaching traffic in time to avoid the accident and, further, that there was no sudden emergency necessitating his parking where he did as he could have parked on the shoulder in several places available within a few feet of the site of the accident. On the other hand the defendant argued that Cutrer was negligent by operating his car in a reckless and unlawful manner without due regard to other traffic; that he was not keeping a proper lookout for other traffic; that he did not have his car under proper control to avoid the accident and that he was driving at an excessive rate of speed, all of which was the proximate cause of the accident. In the alternative, contributory negligence was plead. The quantum of damages is not in dispute.
LSA-Revised Statutes 32:241 provides:
“No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.
“Whenever any police or traffic officer finds a vehicle parked upon a highway in violation of this Section, he is authorized to move it, have it moved, or to require the person in charge of such vehicle to move it to a position permitted under this Section.
*745 “B. The provisions of this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic. * * * ”
The trial court stated in his written reasons for judgment that he was impressed with the straightforward and frank manner of plaintiff’s testimony to the effect that he did not see Beckham until after the car was struck and finally stopped rolling, and that its lights never were turned on until after it was struck. Beckham contradicts this, stating he was standing near the right rear wheel of his car when it was struck, but that he did not see the lights of the Cutrer car, nor did he see any approaching traffic from the other direction. The lower court states he cannot see how this testimony could be true for if Beckham was standing where he said he was he could not have helped but see the lights of the approaching Cutrer vehicle, and he certainly would have seen the lights of the two cars approaching from the opposite direction; also there was nothing to prevent Cutrer from seeing him. This trial Judge expressed his satisfaction, from all of the evidence, that Beck-ham was in his car, and that after it was struck and started rolling he then switched on the lights.
There seems to be no doubt of the negligence of Beckham and the only remaining question is whether Cutrer was guilty of contributory negligence.
While our Courts have held for many years that a driver of a vehicle approaching from the rear must keep his car under such control as to stop for any emergency which arises within the range of his lights, see Odom v. Long, La.App., 26 So.2d 709; Locke v. Shreveport Laundries, 18 La.App. 169, 137 So. 645, and Mickens v. F. Strauss & Sons, La.App., 28 So.2d 84, yet our courts have modified this principle in recent decisions, holding there are certain exceptional circumstances which will take the case out of the application of this doctrine.
In the case of Buford v. Combs, La.App., 50 So.2d 469, 476, we used the following language:
“ ‘The general rule is well established in this State to the effect that it is the duty of the operator of an automobile, while driving at night, to operate said automobile in such a manner that it can be stopped within the range of vision illuminated by the headlights of the car. It is also well settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him, and that no fixed rule may be laid down by which it may be determined just what will constitute such exceptional circumstances. Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495; Hemel v. United States Fidelity & Guaranty Co., La.App., 31 So.2d 38; Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Rea v. Dow Motor Co., La.App., 36 So.2d 750.
“ ‘The facts in the cases of Gaiennie v. Cooperative Produce Co. and Dodge v. Bituminous Casualty Corporation, supra, both of which were decided by the Supreme Court, are similar to the facts in the case now being considered. In the Gaiennie case (196 La. 417, 199 So. 378) the vision of the plaintiff was “momentarily and intermittently impaired” by the lights of approaching cars, and in meeting these cars he dimmed or deflected his lights so that the tilted beam of his headlights projected *746 under the body of the parked track, making it more difficult for him to see the truck. The body of the truck was suspended some three or four feet above the ground and extended back about four feet over the rear wheels. The Court held in that case that because of the exceptional circumstances, the general rule did not apply and that plaintiff was not contributorily negligent in running into the rear of the parked truck.
“ ‘In the Dodge case plaintiff’s vision was impaired by approaching vehicles, but there is nothing in the opinion of the Court to indicate that plaintiff dimmed or deflected his headlights. And there is no mention in the opinion as to the distance the body of the truck was suspended above the ground, the distance it extended behind the rear wheels, or the color or design of the body of the parked vehicle. The evidence simply showed that plaintiff’s visibility was affected by the lights of oncoming traffic, and because his visibility was so affected, he did not see the unlighted truck parked at an angle on the highway until he was right on it. Under those circumstances the Supreme Court held that plaintiff was not contributorily negligent in colliding with the parked vehicle.’ ”
In the Combs case we concluded that the driver of the car approaching from the rear could not, because of the exceptional circumstances existing, be charged with contributory negligence.
Our Appellate Courts are very hesitant to disturb findings of fact of the trial court unless these findings be manifestly erroneous and our Supreme Court has expressed this principle many times, expressing it succinctly in Barlotta v. Walker, 223 La. 157, 65 So.2d 122.
The judgment of the District Court is affirmed.