TATE, Judge
(dissenting).
I must respectfully dissent from the' majority’s reversal of the District Court judgment.
Defendant’s driver left a large, dust-covered cane truck parked unattended on a heavily-travelled main highway. He failed to comply with his mandatory statutory duties to place reflectors 100 feet to the front and rear of the truck, and third reflector to the side thereof, and to remain to protect oncoming traffic. Almost all the testimony in the record concurs that due to the indistinguishable coloring of the unlighted truck and the inadequate warnings the truck was invisible in the night ahead to oncoming traffic from either direction until said traffic was within a few feet of the truck.
In addition, the plaintiff herein was blinded by oncoming traffic; which testimony of plaintiff is supported by the testimony of the oncoming motorist and his wife, and by the testimony of the driver of a car which passed plaintiff immediately before the accident.
The decision of the majority herein is clearly contrary to Dodge v. Bituminous Casualty Corp., 214 La. 1031, 39 So.2d 720, and I cannot reconcile it with the uniform jurisprudence of this Court interpreting the doctrine first enunciated by Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377: See, e. g., Buford v. Combs, La.App., SO So.2d 469, wherein this Court through the organ of the present decision thoroughly analyzes and summarizes the Gaiennie doctrine; see also Washington Fire & Marine Insurance Co. v. Travelers Indemnity Co., La.App., 86 So.2d 743, rendered at our last decision day; Gautreaux v. Oregon, La.App., 84 So.2d 632; and cases cited in these opinions.
The majority overlooks that the proximate cause of this accident is not any failure of the plaintiff to observe the truck, indistinguishable in the dark ahead; it is the failure of defendant’s driver to minimize the extremely hazardous situation created by parking this truck on the travelled portion of the highway, by complying with his statutory duties as set forth at LSA-R.S. 32:241 and 32:441.
The latter statutory provision requires that trucks such as the present must be equipped with “three portable flares, reflectors, or other similar devices * * * plainly visible for a distance of five hundred feet.”
This latter statute further mandatorily requires as to trucks which stop on the highway during the hours of darkness that:
“The operator * * * shall immediately * * * place one such warning device at the side of his vehi *261 cle just inside the black line marking the center of paved highways and near the center of dirt or gravelled highways, and place one such device approximately one hundred feet to the front and another one hundred feet to the rear of his vehicle, and shall maintain these devices in this position during the time the vehicle remains parked.” (Italics mine.)
This truck was left parked on the trav-elled portion of the highway in violation of LSA-R.S. 32:241, subd. A, rather than on the wide level shoulders which the evidence shows were available for the purpose, because one of the four rear tires was flat and presumably the driver considered it “disabled”, so as to be within the exception created by LSA-R.S. 32:241, subd. B, which however provides:
“B. The provisions of this rule [i. e., requiring removal of the stopped truck from the travelled portion of the highway] shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.” (Italics mine.)
Instead of protecting traffic, defendant’s driver set out two flares fifteen feet to the front and rear of this truck, left no lights whatsoever on the truck, and departed with a passing friend to pick up another tire. The truck was left unattended and without warning on this main highway for at .least thirty minutes, during which time the present accident occurred. This was negligence of the grossest kind.
Plaintiff was approaching at a speed of 30-35 mph, was blinded by the oncoming car of Overton Boudreaux, and crashed into the rear of the inadequately lighted and indistinguishable truck left with such gross negligence on this main highway.
The large size of this truck aggravates defendant’s negligence by increasing the hazard created. We seem to hold that because of this size the oncoming motorist should have seen the truck. Certainly, in daylight it should have been easy to see this truck; certainly an appellate court may, sitting in the peace and calm of a library surrounded by books, think of good reasons why this truck should have been seen.
The fact remains, to which all witnesses testify, that the truck could not be readily observed on the highway ahead to ordinarily prudent motorists, because of the dust-coloring, lack of warning, and perhaps the high trailer-bed (under which the beams of traffic approaching from the rear might shine). Appellate courts are not supposed to supply a standard of care of imaginary ideal motorists; the standard the law gives us. to apply is that of a reasonably prudent motorist under the facts and circumstances surrounding the accident in question.
If the facts found by the majority differ than those set forth in this dissenting opinion, the record should not be so construed in view of the following evidence, accepted by the District Court and virtually uncon-tradicted in the record:
a. Truck left without lights:
Passing motorists Stevan Theriot, John J. Suire, Mr. and Mrs. Overton Boudreaux, as well as plaintiff, testified to this' fact; Mrs. Boudreaux testified that she saw some one turn the front lights on after the accident. State Trooper Ignace David, who arrived after the accident, found the front lights only on; the rear lights being demolished. '
Against this overwhelming proof, the only contrary evidence is defendant’s -driver Winters, and his friend, Joseph Guidry, who picked him up to go get a tire. These colored truckdrivers testified that the front, rear, side and top lights of this truck were lit, before and after the accident, and that it was visible from one-half mile away; although it is uncontradicted that there were no clearance (side and top) lights, and that the rear lights could not have been lit after the accident since they were demolished ! On the face of the record, the Dis *262 trict Court properly did riot givel mucli credence to their testimony. .
The only other witness introduced by defendant was Mr. Reno Dugas, a wrecker-man, who frankly admitted that when he testified on direct examination that a truck’s lights were on, he referred to just one of the two trucks stopped on the highway that night, and that “I could have had them trucks mixed, but know one of them had the park lights on”' (Tr-134) and “No, to tell the truth, it could have been the second one” (Tr-136), that is the truck other than the one involved in the present accident.
b.Truck left with flares just 15 feet in front and rear;
Oncoming motorists Mr. and Mrs. Over-ton Boudreaux testify positively to this. Stevan Theriot, who was proceeding from same direction as plaintiff and passed a little prior to the accident, testified that the rear reflector was knocked down by the car in front of him, so he replaced it. As to the distance this rear reflector was behind the truck, he replied it was “a good piece”, but on amplification in the following question, indicates it was between the first and the second car ahead stopped immediately 'behind the parked truck — that is, not much more than a car length behind the parked truck, or about 15 feet behind same.
His entire testimony concerning this is as follows, Tr-104:
“Q. How far was the reflector from the back end of the truck? — A. I didn’t measure it; it was a good piece. I don’t know, I didn’t measure it.
“Q. Was it even with the first car or the second car or any car? — A. They had space between the cars, but it was between me and the second car— in front of the second car. When he started he passed in between and knocked it down.”
This positive testimony is contradicted nowhere in the record, except by the discredited testimony of defendant’s driver and his friend, not believed by the District Court. As noted, Mr. Dugas admitted that the front reflector he saw may have been situated by the other truck not involved in the accident.
State Trooper David who came 30-min-utes after the accident found the demolished rear reflector right by the rear end of the truck; he found the front reflector 100 feet in front of the truck, but of course it was probably so placed after the accident, just as the truck lights were turned on after-wards, in view of the positive uncontradict-ed testimony of the front-approaching Boudreaux’s previously referred to.[1]
c. Truck dust-covered and difficult to discern in night:
All motorists who testified agreed that the truck in question was almost impossible to discern in the roadway ahead until the motorist was within a few feet thereof. The State Trooper also testified that the truck was dust or dirt-covered.
This is uncontradicted in the record, except perhaps by the discredited testimony of defendant’s driver and his friend, disbelieved by the District Court.
d. Plaintiff Suire blinded by lights of oncoming Boudreaux car:
Plaintiff himself testified, Tr-68:
“Q. Before you met this automobile. Now, Mr. Suire, what was the effect on your vision when this other automobile suddenly placed his headlights on *263 bright? — A. They suddenly blinded me I suppose. I couldn’t see.
“Q. Were you blinded for a long interval of time before you don’t remember anything ? [i. e., before he hit the truck, following which plaintiff has an amnesia] — A. I guess it was a few seconds I suppose.”
See also his testimony at Tr-66, and Tr-75.
Plaintiff was corroborated by the testimony of motorist John 'Suire, testifying by written interrogatory in Michigan who replied under oath to Interrogatories 33, 34, and 35 that the Boudreaux’ lights were “fairly bright”, “strong”, and made it “difficult to see.” (Tr-48.)
With the utmost respect for my conscientious and sincere brethren, I can only feel that they have reached a result contrary to that reached by the District Court in response to the eloquent and able oral argument of counsel for appellants that the doctrine of the Gaiennie and Dodge cases should be restricted or limited.
With the utmost respect for the views of my brethren, I feel that it is not our province as an inferior appellate court to do other than to follow the jurisprudence as settled by our Supreme Court. And I may add that I am thoroughly in accord with the Gaiennie and Dodge jurisprudence as the practical and enlightened response to the higher safe-driving speeds, the greater volume of traffic, and the necessities of modern traffic at night, in view of which a greater burden is placed on those who dangerously obstruct the highways with actual or presumed knowledge that even reasonably prudent motorists under present-day circumstances may be unable to avoid colliding with such obstructions; just as reasonably prudent motorists are entitled to expect that no indistinguishable and unlighted obstruction will suddenly rear up in their path on a much-travelled main highway.
For these reasons, I must respectfully dissent.
Rehearing denied;
TATE, J., dissenting.

. The argument is advanced that because after the accident, Trooper David found the front reflector 100 feet in front of the truck, rather than 15 feet as testified to by the Boudreaux’ as its location before the accident, that therefore the testimony of the latter is weakened or to be disbelieved. The “courts will not impute perjury to apparently credible witnesses,” Cockrell v. Penrod Drilling Co., 214 Da. 951, 39 So.2d 429, at page 432, and particularly not on the basis of illogical deductions drawn from an appellate record and contrary to the trial court’s accept-anee of the testimony of said witnesses as credible.