212 So.2d 204 (1968)
Mrs. Dorothy D. ADAMS
v.
ALLSTATE INSURANCE COMPANY, New York Fire and Marine Underwriters, Inc., Charles C. Saucier and James Brown.
Mrs. Orelie AYZAN, in her own behalf and in behalf of her minor daughter, Jean Warren
v.
Charles C. SAUCIER, Allstate Insurance Company, James Brown and New York Fire and Marine Underwriters Insurance Company, Inc.
Robert WARREN, Individually and as head and master of the community, Sandra Callaway Warren and Isabelle Bibby
v.
James BROWN, New York Fire and Marine Underwriters, Inc., Charles C. Saucier and Allstate Insurance Company.
Nos. 3076-3078.
Court of Appeal of Louisiana, Fourth Circuit.
June 10, 1968.
Rehearing Denied July 1, 1968.
*206 Reed, Reed & Reed, Floyd J. Reed, New Orleans, for Dorothy D. Adams, plaintiff-appellant.
Maurice B. Friedman, New Orleans, for Robert Warren, Sandra Callaway Warren and Isabelle Bibby, plaintiffs-appellees.
Duke & Porterie, W. Eric Lundin, III, New Orleans, for Orelie Ayzan and Jean Warren, plaintiffs-appellees.
Christovich & Kearney, W. K. Christovich, New Orleans, for New York Fire and Marine Underwriters, Inc., and James Brown, defendants-appellees.
Porteous & Johnson, John J. Hainkel, Jr., New Orleans, for Charles, C. Saucier and Allstate Insurance Company, defendants-appellants and defendants-appellees.
Before YARRUT, SAMUEL and BARNETTE, JJ., concur.
Rehearing Denied in No. 3076 July 1, 1968.
BARNETTE, Judge.
These three consolidated suits resulted from an automobile accident which occurred on Louisiana Highway 23, shortly after 6 p. m., on November 27, 1964. The facts surrounding the accident, while somewhat unusual, are clear and not in dispute.
On the evening in question, defendant Charles C. Saucier, the insured of Allstate Insurance Company, was driving northward on Highway 23 in the vicinity of Myrtle Grove, Louisiana. Saucier was returning from an all-day fishing trip with a companion Wilbur White, who was a passenger in Saucier's automobile. Saucier *207 was towing a trailer and a 15-foot boat behind his automobile. A short distance north of Myrtle Grove the boat fell off the trailer onto the highway. Saucier testified that he stopped his automobile, then proceeded up the highway a short distance to a place where it, with trailer attached, could be turned around. He then returned to the spot where the boat lay. He decided that it would be impossible to move the boat by hand, so he continued down the road with the intention of turning his car and trailer around again to return in the northbound lane to push the boat from the road with his car. He was attempting to make the turn when he heard the sound of a collision. He stated that he had noticed three cars pass him going north while he was in the act of turning his vehicle around the second time. He testified that the third of these three vehicles passed some 20 to 30 seconds after the first two.
This third vehicle, driven by the defendant James Brown, the insured of New York Fire and Marine Underwriters, Inc., had been travelling north from Myrtle Grove. Brown testified that he did not see the boat in the road until he was 20 to 30 feet from it. He stated he was unable to avoid hitting the boat, and upon doing so he lost control of his vehicle and it veered toward oncoming traffic in the opposite lane, and struck a vehicle owned by plaintiff Isabelle Bibby. The driver of the Bibby vehicle was plaintiff Sandra Warren. Mrs. Bibby and plaintiff Mrs. Dorothy Adams (now Mrs. Dorothy Adams Bonneval), along with Jean Warren, the minor daughter of plaintiff Mrs. Orelie Ayzan, were passengers in the Bibby car.
As a result of the collision between the Brown and Bibby vehicles, all four occupants of the Bibby car were injured. No one else suffered physical injuries in the accident.
The record reveals certain other testimony and evidence which we find to be pertinent to the case. Defendant Saucier testified that when the boat fell from the trailer it came to rest perpendicularly to the road, mainly off of the right of way, but with its stern protruding some 3 to 5 feet into the northbound lane of traffic. He stated that the boat was white with blue inside trim, and was approximately 3 to 4 feet high. The testimony is clear to the effect that it was raining at the time of the accident, the roads were wet, and it was dark. All three drivers were using their headlights on low beam.
The three suits which were filed all named Saucier and Brown and their respective insurers as defendants. Saucier filed a third party demand against Brown in each suit. The plaintiffs in these consolidated actions were: in suit No. 8613, Mrs. Dorothy D. Adams; in suit No. 8791, Mrs. Orelie Ayzan in her own behalf and in behalf of her minor daughter Jean Warren; in suit No. 8792, Robert Warren, individually and as head and master of the community, Sandra Callaway Warren, and Isabelle Bibby.
Judgment was rendered for the plaintiffs in all three suits against Saucier and his insurer, Allstate. The suits were dismissed as to Brown and his insurer. The third party demand of Saucier against Brown in each suit was likewise dismissed.
Appeals have been taken by Saucier and his insurer, Allstate, from all three judgments, and by Mrs. Dorothy Adams from the judgment in the first suit. Saucier and Allstate contend that they are not liable in the matter and that Brown's negligence was the proximate cause of the accident. They contend alternatively, should their own negligence be affirmed, that Brown and his insurer are liable to them for indemnity or at least for contribution as joint tort feasors. Mrs. Adams appeals for a substantial increase in quantum.
Mrs. Ayzan, Isabelle Bibby and Sandra Warren have answered the appeals in their respective cases. They ask for an increase in the damages awarded them by the trial court.
*208 James Brown and his insurer have not answered the appeals.
In our consideration of the various aspects of this case we turn first to the legal consequences of the actions of the defendant Charles C. Saucier.
Saucier contends plaintiffs in no way proved any negligent act on his part. He argues that he secured the boat to the trailer in such a manner that it would not have fallen off had not an eye bolt, to which the connecting lines had been attached, broken off. He testified that just before the boat slipped off he had been forced to swerve from the highway to miss a dog crossing the road. It was his opinion that the resulting jar put such strain on the bolt that it broke. He invoked the doctrine of latent defect.
We are not impressed with the contention that Saucier was free from negligence in this respect. He owned the boat for four years prior to the accident and had used it on numerous occasions, thereby exposing it to the corrosive effects of the elements. Yet he admittedly had not safety-checked his trailer and boat towing attachments and, in fact, testified that he knew the connecting eye bolt was somewhat rusty.
Irrespective, however, of any question of negligence resulting from Saucier's omission to safety-check the boat-trailer attachments, we agree with the trial court's judgment against him on another basis, which in our opinion clearly evidenced fault on Saucier's part.
Saucier admitted that it was dark and raining at the time of the accident. He stated that he had a passenger, Wilbur White, with him in the car. He admitted that it was some three to five minutes from the time the boat fell from the trailer until the accident occurred, and that he did have a flashlight with him. Nonetheless he decided to undertake a complicated time-consuming maneuver of removing the boat from the busy highway without using the means at his disposal to warn oncoming traffic of the dangerous obstruction which he had at least indirectly caused to be on the highway. We hold that this omission or mistake of judgment was such a deviation from the standard of care incumbent upon him to safeguard his fellow motorists from the risks imposed by his action as to constitute negligence on his part.
We will now consider the question of the alleged negligence of defendant James Brown. It is the contention of appellants Saucier and Allstate that Brown's actions constituted negligence which was the sole proximate cause of the accident. The plaintiffs, on the other hand, contend that Brown was a co-tort-feasor with Saucier and should be held liable in solido with him.
We cannot agree with either of these contentions. We are fully cognizant of the jurisprudence that the operator of an automobile is required to maintain such control and lookout as to be able to avoid ordinary hazards which appear in the road in front of him. However we find that it is equally well settled that a motorist using ordinary care has the right to presume that the thoroughfare in front of him is free from unusual hazards. He will not be charged with negligence if he strikes an object which no person could reasonably suspect would be there and could not have seen in time by the use of ordinary care. Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909 (1956), and cases cited therein.
We think the latter maxim is decisive of the issue in the case before us. Brown had been proceeding on the highway well within the speed limit. There was nothing to indicate to him the presence of the boat in the road. For although the boat was white, and stood 3 to 4 feet high, the facts show that the night was dark and rainy at the time of the accident. Further, traffic was travelling toward him with headlights burning. Under these circumstances we do not find that it was negligence *209 on his part not to see the boat until he was 20 to 30 feet from it. He was thus unable to avoid striking it, causing him to lose control of his vehicle and to hit the Bibby car. We conclude, therefore, that the sole cause of the accident was Saucier's negligence in allowing the boat to remain unguarded on the busy highway for the length of time that he did. He had ample means and time to warn oncoming traffic of the hazard which it presented. This act of omission constituted actionable negligence, irrespective of any question of negligence in regard to the attachments of the boat and trailer.
This brings us to the more difficult issue of the quantum of damages awarded by the trial court. Mrs. Dorothy Adams has appealed the judgment below which awarded her $4,662.90, contending that this figure is inadequate to compensate her for her injuries. The defendants Saucier and Allstate have also appealed contending the award is excessive and should be reduced.
The record reveals that Mrs. Adams was 21 years of age at the time of the accident. She was legally separated and had no children. She has since remarried. Immediately after the accident on November 27, 1964, she was taken to Algiers General Hospital; then to Charity Hospital, there examined and released. It is her contention that she was knocked unconscious by the accident, but we do not find anything in the record to substantiate this allegation. In any event, she returned to Charity Hospital on at least three other occasions in the two-week period following the accident, complaining of preaccident gastric difficulties, and neck pains which she did relate to the accident. She also saw her own private physician, Dr. Hanckes A. Klein, on December 9, 1964, and he referred her to Dr. George C. Battalora, an orthopedic specialist. Dr. Battalora testified that he first saw Mrs. Adams on December 11, 1964, at which time he diagnosed her condition as a cervical strain. He treated her on several occasions following the visit of December 11. He prescribed a cervical collar to alleviate her neck injury and she wore this device until January 22, 1965. He saw Mrs. Adams for the last time on June 29, 1965, and was of the opinion that her condition at that time had been completely alleviated. Mrs. Adams' mother, father, and sister-in-law testified as to her condition after the accident. They stated that she was not able to return to her home as she had been living alone and that, as a result of the accident, she was unable to care for herself for a long period of time. She stayed with her mother and father for three months, at which time she was able to return to her own home.
Mrs. Adams herself was somewhat vague and even contradictory about the injuries and illnesses which she had experienced prior to the accident. The record clearly indicates that she requested treatment at Charity Hospital just three days before the accident for a chronic digestive problem. When she returned there after the accident she again complained of the digestive illness as well as her neck injury. She also admitted having fallen from a horse the year before the accident. Dr. Battalora himself attributed some of the symptoms which he observed to a back injury which preexisted the automobile accident. In spite of the inconsistencies we still find the record does establish that she did suffer a cervical sprain as a result of the accident.
Mrs. Adams has alleged that she lost three teeth in the collision, and has asked that this be considered in increasing the sum which she was awarded by the court below.
Dr. Elmer Grundmeyer, a dentist, testified on Mrs. Adams' behalf and stated that she came to him in February, 1965. At that time he observed that three of her upper teeth had been cracked, apparently due to some type of physical trauma. He was unable to determine exactly when this trauma occurred, and stated that it could have happened at any time. Mrs. Adams *210 told him it was the result of an automobile accident. Dr. Grundmeyer stated he found that Mrs. Adams' entire tooth structure was in poor condition, making it necessary to remove all of her upper teeth and replace them with a full upper plate. He stated that she had a previous history of dental problems due to the chalky nature of her teeth. He testified that the alleged automobile injury did not cause her generally poor dental health, other than that of the three teeth directly involved. We conclude that the record does support a finding that these three teeth were injured in the accident in question, and should be considered in arriving at her damage award.
We are unable to determine how the trial judge reached a figure of $4,662.90 as the measure of damages to which Mrs. Adams was entitled. He gave no reasons for judgment, nor did he specify in the judgment itself what part of this amount was for special damages incurred and what part was for general pain and suffering. In any event, we hold that the record does support the following conclusions relative to the items of special damage.
Dr. Battalora stated that his fee for services rendered to Mrs. Adams was $156, but that $50 of this total was for a lower back complaint not related to the accident. We thus find that $106 is the only portion of Dr. Battalora's fee which can be assessed against the defendants.
Dr. Grundmeyer testified that he charged Mrs. Adams a flat fee of $150 for extracting all of her upper teeth and replacing them with a full upper plate. We cannot separate so much of that work as applying to only the injured three teeth, and cannot find that the work or fee would have been proportionately less involved or costly if only these three had been removed and only a partial denture inserted. It is highly possible that this would have been an even more intricate procedure and, in fact, more costly. In any event we hold that the entire $150 fee should be considered as special damages.
The record also contains two sales orders for medical supplies. The first is for a lumbosacral corset which cost $18.54. The other order was for the plastic neck brace, totalling $8.76. In line with Dr. Battalora's testimony relative to the nonaccident-related lower back difficulties experienced by Mrs. Adams, we are of the opinion that the cost of the corset should not be considered as an item of special damages in this case.
Counsel for the interested parties stipulated that Mrs. Adams missed 53 days of work and that her total gross pay loss was $424. This is an includable item of special damage.
Finally there was an additional stipulation as to drug charges of $50 which also should be assessed against defendants.
We therefore find that the record supports a figure of $738.76 as the total amount of special damages to which Mrs. Adams is entitled. This leaves a balance of $3,924.14 which, if we were to leave undisturbed, would represent her general damages for pain and suffering. We cannot say that it is an award which represents an abuse of the much discretion allowed the trial court in assessing damages in these cases. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967), for a recent opinion by the Supreme Court in this area. We will affirm the total award of $4,662.90 and reject both appeals which ask for an increase or reduction in this amount.
Next we consider the amount awarded to Mrs. Orelie Ayzan, individually and in behalf of her minor daughter Jean Warren. Mrs. Ayzan has been divorced from her daughter's father since her daughter's birth, and she has had custody of her since that time.
The total award to Mrs. Ayzan was $6,653. We must state at the outset that we consider this award to be grossly excessive. We say this in spite of the fact Miss Warren *211 is a seriously handicapped cerebral palsy victim, which caused her to be more emotionally affected by the accident than were her unafflicted companions.
The medical record reveals that Miss Warren suffered an L-shaped laceration of her left leg of undescribed length. She was seen at Charity Hospital immediately after the accident. The laceration was serious and she returned to the hospital on ten occasions through February 1, 1965, for treatment. It did heal successfully, however, and caused no residual impairment to her leg other than its apparent unsightliness.
In addition Mrs. Ayzan alleges that Miss Warren, who was then 18 years of age, lost two teeth in the accident. In this regard Dr. James L. Hagen, Jr., a dentist, testified that he saw Miss Warren on March 11, 1965. Her mother told him at that time that Miss Warren lost two front teeth in an automobile accident. He could not state that she did in fact lose the teeth in the accident. He stated that her whole dental condition was very poor, in fact she was missing five teeth in addition to the two her mother stated had been lost in the accident. He fitted the young girl with a partial bridge to replace just the two teeth which were allegedly lost in the accident.
Defendants Saucier and Allstate make much of the fact that Miss Warren did not see the dentist until three and a half months after the accident. They also point to the fact that in none of the reports by Charity Hospital relative to the young girl's treatments after the accident is any mention made of the fact that she lost teeth as a result of injury. We find that these circumstances are outweighed by the fact that other companions in the automobile with her noticed that her mouth was bleeding after the accident. Mrs. Bibby testified that she noticed that the teeth had been knocked out. We, therefore, find that Miss Warren did lose two teeth as a result of the accident.
Mrs. Bibby testified the accident has had a marked effect on the behavior of Miss Warren, for since that time she has been unduly apprehensive of riding in automobiles. She stated that previously automobile rides had been one of the few forms of diversion and enjoyment for the girl.
Again in order to evaluate properly the damage award to Miss Warren we must consider first the items of special damage which the record sustains. As to these we find that it was stipulated and agreed between counsel that three items of medical charges, totalling $126, were necessitated as a result of the accident and are recoverable. The record reveals no other items of special damages as to Mrs. Ayzan individually, or in behalf of her daughter. Thus the amount of general damages would be $6,527, were we to leave the award undisturbed.
We are compelled, however, to reduce this award as it evidences an abuse of the wide discretion allowed the trial judge. We find that $3,500 would adequately compensate Miss Warren for her injuries, pain, and suffering resulting from the accident. Therefore, the judgment to her mother, Mrs. Orelie Ayzan, individually and in her behalf, will be reduced to $3,500, plus the $126 as special damages, or a total award of $3,626.
We next consider the award to Robert Warren, as head and master of the community between himself and Mrs. Sandra Warren, and the award to Mrs. Warren individually. The trial judge specifically decreed a sum of $387 to be the amount awarded to Mr. Warren, presumably for special damages suffered by him as head and master of the community. The judge awarded $4,500 to Mrs. Warren, which we presume was for her general damages.
As to the award of $387 to Mr. Warren, the record reveals that the total medical bill for his wife's injuries was $220. We cannot determine specifically what expenses the additional $167 of the award was meant to cover. Counsel for Mr. Warren stipulated at the trial of this case *212 that the $220 total included a charge of $167 which was reflected on another statement submitted by Mrs. Warren's physician and entered into the record. Apparently the trial judge inadvertently added the two figures together. As we can find no other basis for this additional sum of $167 we will reduce the award to Mr. Warren by that amount.
In regard to Mrs. Warren's award of $4,500 the record reveals that she sustained multiple fractures of three ribs, a fracture of the left clavicle, a moderate pneumothorax and extensive subcutaneous emphysema. She was rendered completely irrational, and remained so for two or three days as a result of a cerebral concussion. She was hospitalized for 11 days, and after her discharge was seen periodically for several months by her physician on an outpatient basis. Counsel for defendants Saucier and Allstate admitted in oral argument before this court that the award to Mrs. Warren was not excessive and should not be decreased. On the other hand we find that it was not inadequate to compensate her for her injuries, therefore, we will not disturb it.
This leaves us with a consideration of the award to Mrs. Isabelle Bibby. We notice, at the outset, that there was no evidence introduced which establishes her true marital status. She is referred to in brief and throughout the transcript of testimony as Mrs. Bibby. If she is married and not separated from her husband, he would be the proper party plaintiff for any special damages which she suffered. This issue was not raised by any of the parties to the action and we will assume that her marital status was considered by the trial judge and that his decision to award her the full measure of damage is correct.
As to her special damages, we find that several items were stipulated between the parties. Mrs. Bibby's total medical bill was $84.50. The value of her automobile, which was a total loss, was $275. The amount of lost wages was stipulated at $294. The record reveals no other items of special damage, thus her special damage award must be $653.50. As the total award to Mrs. Bibby was $4,366.50, we find that her general damage award must have been $3,713. Counsel for defendants argue that this amount is grossly excessive.
The record reveals that Mrs. Bibby suffered one fractured lower left rib, and abrasions and contusions on her forehead and knee. She testified she was hospitalized for three days, and after discharge she returned for outpatient treatment on two or three occasions. The record also indicates that she had completely recovered by early January, 1965, a little over a month after the accident. Under these circumstances we conclude that an award of $1,500 would adequately compensate her for her pain and suffering. Accordingly the judgment awarding her $4,366.50 will be reduced to $2,153.50 to include both her general and special damages.
Finally there is a question involving the limit of liability of Allstate by the contractual terms of its policy. As Allstate has admitted issuing a policy of liability insurance to defendant Charles C. Saucier but has neglected to introduce its policy into evidence to prove the liability limits it has alleged in oral argument, there is no evidence upon which to consider Allstate's contention of limited liability. Therefore, it is liable in solido with its insured Saucier for the full amount of all four judgments herein.
For the reasons hereinabove expressed, the judgment of the trial court in suit No. 8613 in favor of Mrs. Dorothy D. Adams, in the total sum of $4,662.90, is affirmed. The judgment in suit No. 8791 in favor of Mrs. Orelie Ayzan, individually and in behalf of her minor daughter Jean Warren, is amended to reduce the total award to $3,626 and as amended is affirmed. The judgment in suit No. 8792 in favor of Robert Warren, as head and master of the community, is amended to reduce the award to $220 and as amended is affirmed. *213 The judgment in suit No. 8792 in favor of Sandra Warren, in the sum of $4,500, is affirmed. The judgment in suit No. 8792 in favor of Mrs. Isabelle Bibby is amended to reduce her total award to $2,153.50 and as amended is affirmed. In all other respects the judgments of the trial court in these consolidated cases are affirmed. The total cost of this appeal is to be borne by the appellants Charles C. Saucier and Allstate Insurance Company.
Judgments affirmed and amended and affirmed.