AYRES, Judge.
This is an action in tort wherein plaintiff, on behalf of his minor son, Billy Eugene Wilhite, seeks to recover damages for personal injuries sustained by the minor when struck by a motor vehicle owned and operated by defendant Joseph C. Beavers, an uninsured motorist. Plaintiff, individually and on his own behalf, seeks reimbursement of hospital and medical expenses incurred by him in the treatment of his son’s injuries. Made defendant in addition to Beavers is the Continental Insurance Company, plaintiff’s insurer, whose liability is asserted under the uninsured motorist’s provisions of its policy. In a third-party petition combined with its answer, the Continental Insurance Company sought, in the alternative, judgment over against Beavers for any amount which it might be condemned to pay.
Finding defendant Beavers free from negligence but concluding, in any event, Billy Eugene Wilhite was guilty of contributory negligence, the trial court rejected plaintiff’s demands as well as the third-party demands of defendant Continental Insurance Company against defendant Beavers. From the judgment, plaintiff appealed.
The accident upon which this action is based occurred as the minor, Billy Eugene Wilhite, walking easterly on the north side of the 700 block of Smith Street, outside the corporate limits of West Monroe, was struck from the rear by an automobile, owned and driven by Beavers, when Beavers took to his wrong, or left, traffic lane in an attempt to pass a forward car owned and operated by Mrs. Janet Faye Hair. The street, asphalt surfaced to a width of approximately 20 feet, with dirt shoulders but without sidewalks, runs in a general east and west course. The vicinity was characterized as “heavy” residential, with a church, three grocery stores, and a number of gasoline service stations within an area comparable to two or three city blocks.
At the time of the accident, about 6:30 a. m., December 20, 1967, the street was wet; driving conditions, described as bad or dangerous, were said to have been worsened by the darkness of the early morning, attributable, partially, at least, to the low overhanging clouds and the presence of a dense fog impenetrable by the headlights of automobiles for any appreciable distance.
The accident occurred on Smith Street, as aforesaid, about 610 feet east of Washington Street, about- 80 feet east of Lilac Street, and about 230 feet west. of Pink Street, all of which enter or cross Smith Street at right angles. The Wilhite family lives in the second block of Pink Street, north of Smith Street.
Billy Eugene Wilhite, approximately 12 years of age, dressed for school, walked to a store located at the intersection of Washington and Smith Streets where he purchased supplies for a school party. On the way home, he walked easterly along Smith Street about a foot or a foot-and-a-half, so he testified, from the northern edge of the street’s asphalt surface, facing *922 oncoming traffic. Mrs. Hair and her companion, in the forward car, placed young Wilhite nearer the center of the westbound traffic lane of the street. However, neither of these women saw the child until he was almost alongside their car. Their failure to see him sooner was due, according to their testimony, to their lack of vision occasioned by the density of the fog. Beavers’ testimony in this respect was more in line with that of the minor whose testimony is corroborated by the evidence of the location of the point of impact.
On approaching this point in the street, Beavers, who had been following the lead vehicle at a distance of from 30 to 40 feet as both cars proceeded north on Washington Street and then easterly on Smith Street, attempted a passing movement notwithstanding his inability to see that the way ahead was clear. His presumption that the way was clear was predicated on his inability to see headlights of oncoming vehicles. Beavers first testified that, after coming into the passing lane, the minor was perhaps only 50 feet away, whereupon he endeavored to steer his car to the right as he applied his brakes, but, because the road was slick and wet, the car skidded and “fishtailed,” presumably meaning that the rear of his vehicle was not properly trailing the front of the car, which resulted in a tendency of the car to assume a sidewise position. However, later, under cross-examination by defendant' insurer’s counsel, Beavers testified he never saw, nor could he have seen, the minor in the lights of the forward car; that when he first saw him he was at the rear of the lead car and was “right on him” (Beavers); that it was impossible for him to measure this distance in feet; and that he made an attempt to steer his vehicle to the left but was unable to stop. After beginning his passing movement, Beavers traveled only 94 feet before striking the minor. The left front of the Beavers vehicle struck the minor, knocking him seven or eight feet to the shoulder of the street where he came to rest near some mailboxes.
It was proper for the minor to walk on or near the edge of the surface of the street. Where there are no sidewalks, the statute LSA-R.S. 32:216, subd. B provides that:
“ * * * any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction.”
Under similar prior statutes, this principle has long been recognized and given effect by the courts. Locke v. Shreveport Laundries, 18 La.App. 169, 137 So. 645 (2d Cir. 1931). There it was held that a pedestrian had the legal right to travel on a concrete highway under the provisions of Act No. 296 of 1928. A prior decision so holding is Kelly v. Ludlum, 9 La.App. 57, 118 So. 781 (2d Cir. 1928). A similar conclusion was reached in Ward v. Donahue, 8 La. App. 335 (2d Cir. 1928). To the same effect is a pronouncement in Savoie v. Walker, 183 So. 530 (La.App., 1st Cir. 1938).
A minor, walking where he has a right to walk on a public street, which right is not only accorded him by statute but is recognized in the jurisprudence, is not chargeable with contributory negligence in so doing when he is hit by an automobile merely because of his being on the street. Nor does one who walks along the left edge of a roadway facing oncoming traffic, in order to purge himself of contributory negligence, have to maintain a lookout for automobiles approaching from his rear. Rawls v. Red River Lumber Co., 152 So. 337, 338 (La. App., 2d Cir. 1934) ; Locke v. Shreveport Laundries, supra.
In Savoie v. Walker, supra, the court recognized the right of pedestrians to walk upon the left edge of the pavement of a roadway which, under Act No. 21 of 1932, § 3, Rule 11(d), was that part of the road on which the law requires them to walk. The court particularly noted there was no *923 law or rule of the road requiring a pedestrian walking on the left side of a road to constantly look back for traffic following on the other side of the road. The court stated:
“He is required to be looking forward for cars meeting him in front. A car approaching a pedestrian from his front will be on its side of the road, and the pedestrian is required to keep a careful lookout for such approaching cars. ' But a car approaching from his rear on the left side of the road is on its wrong side of the road, and the driver of such a car is required to be vigilant and cautious because he is occupying his wrong side of the road” (Emphasis supplied.) 183 So. 530, 535.
See, also: Rawls v. Red River Lumber Co., supra; Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250 (1917).
It may be noted in the instant case that Beavers did not sound his horn or give any other warning to the minor of his car’s approach to the minor’s rear, other than to place his left-turn signal in operation. This, however, was not a signal intended for persons or traffic in Beavers’ left, or wrong, lane of traffic. The purpose of this signal is to give notice to following vehicles of the motorist’s intention to change traffic lanes. It has no other purpose and is wholly ineffective as a notice to a pedestrian walking and looking in the opposite direction to that in which the motorist is proceeding.
In Hernandez v. State Farm Mutual Automobile Ins. Co., 192 So.2d 679, 682-683 (1966), the Court of Appeal, Third Circuit, had occasion to observe and, in Arnold v. Traders & General Insurance Company, 204 So.2d 425, 427 (1967), to emphasize:
“The jurisprudence of this state is firmly established to the effect that when visibility is materially impaired because of smoke, mist, dust, fog or other atmospheric conditions, a motorist is held to a duty of operating his vehicle with an unusually high degree of care. He should reduce his rate of speed to such an extent, and keep his car under such control as to reduce to a minimum the possibility of accident from collision. And, as an extreme measure of safety, it is his duty when visibility ahead is not possible or is greatly obscured, to stop his car and remain at a standstill until conditions warrant going forward. He does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead, and if he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So. 2d 148; Demerest v. Travelers Insurance Co., 234 La. 1048, 102 So.2d 451; Ardoin v. Southern Farm Bureau Casualty Ins. Co., 133 So.2d 129 (La.App. 3d Cir. 1961); and Moses v. Moseley, 146 So.2d 263 (La.App. 3d Cir. 1962).” (Emphasis supplied.)
It was apparent in the Hernandez case, from the motorist’s own testimony and in view of the weather conditions and the poor visibility which existed at the time of the accident, that the motorist was negligent in failing to reduce his rate of speed to such an extent that he could stop within the range of his vision, and in failing to keep his car under such control as to reduce to a minimum the possibility of an accident from collision.
In the Arnold case it was stated that, if the rain was so heavy that the motorist could see only five to ten feet ahead of a vehicle, he was negligent in operating the vehicle at a rate of speed at which he could not stop in time to avoid an accident. If the rain, however, was not so heavy as to prevent complete visibility, then the motorist was negligent in failing to keep a proper lookout.
In Locke v. Shreveport Laundries, supra, the motorist, due to bright lights of oncoming vehicles, did not see the deceased *924 until his body was hurtled over the right fender of his truck. With respect to these facts, this court, through the late Judge Taliaferro, stated:
“The evidence leaves no doubt in our mind [minds] that Norman, as the automobiles approached him, did what many drivers do under like circumstances. He continued moving at about the same rate of speed and presumed his line of travel to be clear. Under the conditions confronting him at the time, it was his duty to either stop his truck or bring it under such control as to enable him to stop it instantly, until the momentary danger had passed. On the other hand, if his failing to see Locke on the road side was not due to the lights of the approaching cars, it follows as a logical deduction, since his own lights were good, that he was not keeping a proper lookout for pedestrians, and did not see that which he could, and should, have seen, under the circumstances. In either case there is liability of his employer.
“ ‘It is gross negligence for the driver of an automobile to run his machine on a city street when the mist, rain, and blinding headlights of another car made it so that he could not see.’ Ward v. Donahue, 8 La.App. 335; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A.L.R. 1194; Pepper v. Walsworth, 6 La.App. 610.
“ ‘Failure of motorist, blinded by headlights, to reduce speed of 30 miles an hour held proximate cause of collision with parked truck.’ Woodley & Collins v. Schusters’ Wholesale Produce Co., 170 La. 527, 128 So. 469.
“ ‘He will be presumed, in case of accident, to have seen what he should have seen in the performance of his duties.’ Kelly v. Schmidt & Zeigler, Ltd., 142 La. 91, 76 So. 250.” 137 So. 645, 647.
It was further stated in Locke v. Shreveport Laundries that, had Locke been walking on the right-hand side of the road in violation of the statute, that fact did not bar recovery unless such act constituted negligence proximately causing the accident. The court stated:
“ * * * the fact that Locke may have been on the wrong side of the highway was not the proximate, but a very remote, cause of the accident. ” (Emphasis supplied.) 137 So. 645, 648.
Thus, a motorist will be held negligent in driving at a rate of speed greater than that in which he could stop within the range of his vision. He cannot assume that his course of travel is free from danger or obstruction in the absence of ability to see clearly ahead. Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238 (1937); Roberts v. Aetna Casualty & Surety Company, 216 So.2d 870 (La.App., 2d Cir. 1968); Eubanks v. Wilson, 162 So.2d 842 (La.App., 3d Cir. 1964).
Rules are well grounded in the jurisprudence to the effect that a motorist driving on that portion of a public highway which is ordinarily used by vehicles going in the opposite direction must keep a very vigilant watch ahead for both vehicles and pedestrians. He should signal his approach as a warning; when it is dark, or nearly so, the lights of his vehicle should be on and giving effect. He should proceed slowly and cautiously, and at the first appearance of danger he should take proper steps to avoid it — if necessary, stop his vehicle. He will be presumed, in case of accident, to have seen that which he should have seen in the performance of his duties. Kelly v. Schmidt & Zeigler, supra.
It is clear that a motorist shall not attempt a passing movement unless he first determines the maneuver can be made in safety. LSA-R.S. 32:75 provides that an overtaking and passing motorist shall not attempt to effect a passing movement unless the opposing lane of travel is free of traffic. Though the language of the statute appears to specifically refer to ve *925 hicular traffic, it likewise applies to pedestrians. In Wall v. Aetna Casualty & Surety Co., 167 So. 903, 908 (La.App., 1st Cir. 1936), defendant’s assured attempted to pass a forward vehicle and struck a pedestrian standing in the motorist’s passing lane awaiting clearance of traffic in the other lane before crossing it. The court stated:
“ ‘Ordinarily, in driving a car on the wrong side of the road even for the purpose of passing another car, the driver is held to the utmost care, and should be able to see a sufficient distance ahead to prevent running into an object or a person on that side of the road. * * * ”
Whether the pedestrian stopped in the motorist’s passing lane, as in the Wall case, or whether he was walking in that lane, as in the instant case, makes no difference so far as the pedestrian’s freedom from fault and the motorist’s responsibility are concerned. The principle is the same. In either instance the pedestrian was where he had a right to be.
The defendant recognizes the rule that a motorist traveling on public highways after dark or during a rainstorm, fog, or other abnormal conditions, which prevent him from seeing ahead except imperfectly, must guard against striking objects in the road with which he may be suddenly confronted. There is an exception to this general rule to the effect that a motorist may assume the road is safe for travel even at night. Defendant, however, relies upon an exception to the exception to the general rule and contends “a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway,” and, thus, relies upon pronouncements and rulings to that effect in these cases: Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909 (1956); Suire v. Winters, 233 La. 585, 97 So.2d 404 (1957); Rushing v. State Farm Mutual Automobile Ins. Co., 180 So.2d 110 (La.App., 2d Cir. 1965); Vidrine v. American Employers Insurance Company, 189 So.2d 727 (La.App., 3d Cir. 1966); Adams v. Allstate Insurance Company, 212 So.2d 204 (LaApp., 4th Cir. 1968).
These cases are distinguishable from the instant case. In the cited cases, the motorists were proceeding in their proper lanes of travel. The obstructions with which the vehicles collided were wrongfully and unlawfully in the motorists’ traffic lanes. For instance, in the Vowell case, the vehicle in which plaintiff was riding ran into the rear of a lumber truck stopped in the approaching motorists’ proper lane without lights during the darkness of the early morning hours.
In the Suire case, plaintiff’s automobile collided with the rear of defendant’s truck and trailer which were parked at night in the center of plaintiff’s traffic lane on a two-lane highway.
There was no dereliction of duty on the part of the motorist in the Rushing case where the motorist’s car struck plaintiff as he walked from behind a station wagon which was parked on the right-hand side of a street. Plaintiff walked into the path of the oncoming vehicle.
In the Vidrine case, it was held that a pedestrian who was walking very near the center line of the main-traveled portion of a street, on a night so foggy that he was unable to see the bright headlights of the approaching automobile until the vehicle was within 20 feet of him, was guilty of contributory negligence.
In the Adams case, it was held that defendant, a northbound motorist who, after a boat he was towing fell off his trailer, had ample means and time to warn oncoming traffic of the hazard that the boat, lying partially on the highway, presented, was guilty of negligence that was the sole cause of an accident which occurred when the vehicle of another northbound motorist struck the boat, the motorist lost control of his vehicle, veered into the oncoming traf- *926 fie in the opposite lane and struck an oncoming automobile.
As already observed, the minor in the instant case was where he had a right to be on the highway when struck by Beavers’ automobile, in Beavers’ wrong lane of travel, as Beavers undertook to pass a forward vehicle at a time he could not see ahead or ascertain that the passing lane was clear.
Beavers was well acquainted with the street and the vicinity in which the accident happened. In his testimony, to which we have already referred, he characterized the area as “heavy” residential. In attempting to pass a forward vehicle under conditions established to exist here, such as the inclement weather, the wet and slippery roadway, and his inability to see due to the density of the fog, there can be no conclusion consistent with those facts other than that Beavers was guilty of gross negligence.
Nor do we find, under the facts of this case and the rules established in the jurisprudence, any basis for concluding that the minor in the instant case was guilty of contributory negligence.
With respect to the issue of quantum, the record discloses that, by the force of the impact when struck by the automobile, the minor was rendered temporarily unconscious and sustained severe injuries, primarily to his head and face, such as open wounds, cuts, lacerations, bruises, abrasions, and contusions. These were described by the treating physician, Dr. Eugene F. Worthen, a plastic surgeon, as multiple dirty, ragged, punctured wounds involving the skin and muscles of his forehead, left lateral orbital area, and chin. Some of these were described as traumatic tatoos, meaning, as we were given to understand, that the affected skin and flesh were impregnated or impacted with foreign substances. The wounds were cleaned and much of the damaged tissues was cut and removed. To repair the wounds, sutures were required in three separate layers of the face, which included the muscles, other soft tissues, and the two layers of the skin. Surgery was performed about noon of the day of the accident under a general anesthetic. Wilhite was hospitalized on that occasion for a period of four days, after which he was confined to his home for two weeks. The removal of such of the sutures as were intended to be removed was completed two weeks following the accident.
Notwithstanding surgical repair, the minor remained disfigured by the presence of scar tissue accompanied by red discoloration of the affected areas of the face. Prominent were the scarred areas on the left of his forehead near the left eye and on his chin. Except for additional repair in the nature of plastic surgery performed by Dr. Worthen September 6, 1968, likewise under a general anesthetic, the scarring and disfiguration would have been permanent. Three days of hospitalization were required in connection with this surgical procedure. Such of the sutures as were removable were removed several days later. Nevertheless, it was stated that the disfigurement in these affected areas would persist for an anticipated additional period of 18 months, at which time it was to be expected the residual disfigurement would have disappeared except to a very minimal degree.
It appears reasonable to conclude from the record that, at the time of and immediately following the accident, young Wil-hite suffered intensive pain after regaining conciousness and until he was admitted to a hospital and given sedatives for relief. Following surgical procedures on the two occasions, the minor suffered pain and discomfort for a few days but not severely. Only a minimal amount of sedatives was required for relief.
For the injuries sustained and the pain, suffering and discomfort endured because of the injuries and incidental to surgery on two separate occasions, an award of $3,500.00 appears to be ample.
*927 No controversy presently exists with respect to special damages such as hospital and medical expenses incurred in treatment of the minor’s injuries. These aggregated $1,720.10, $500.00 of which was paid by the defendant insurer and for which it is entitled to credit.
Thus, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiff, Thomas Elton Wilhite, as administrator of the estate of his minor son, Billy Eugene Wilhite, against the defendant Joseph C. Beavers, on confirmation of a default, and against the defendant Continental Insurance Company, after trial of the cause on its merits, in solido, for the full sum of $3,500.00, and in favor of plaintiff, Thomas Elton Wilhite, individually, against Joseph C. Beavers and the Continental Insurance Company in solido for the full sum of $1,220.10, all subject to the latter’s contractual limitation of liability in the principal sum of $5,000.00, and against defendant Joseph C. Beavers in the further sum of $500.00, together with 5% per annum interest on all of said sums from judicial demand until paid, and all costs.
Reversed and rendered.